**In re Charlotte E. LAWSON, Debtor.**

**Charlotte E. Lawson, Plaintiff,**

**v.**

**Sallie Mae, Inc., Texas Guaranteed Student Loan Corp., and Eric Lawson, Defendants.**

**Bankruptcy No. 00–02299–3F7.**
**Adversary No. 00–160.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 19, 2000.

William B. Johnson, Henry & Johnson P.A., Jacksonville, FL, for plaintiff.

R. Raye Curry, Holland & Knight L.L.P., Jacksonville, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court upon a Complaint to Determine Dischargeability of a Debt filed by Charlotte E. Lawson ("Plaintiff") on April 27, 2000 (Doc. 22) against Sallie Mae, Inc. ("Defendant"), Texas Guaranteed Student Loan

Corporation ("TGSL"), and Eric Lawson. The Court entered default judgment against TGSL on June 6, 2000 (Doc. 9). The Court entered default judgment against Eric Lawson on June 15, 2000 (Doc. 13). Upon review of the evidence presented and arguments of counsel at trial August 15, 2000 and upon review of submissions, the Court concludes that Plaintiff's debt to Defendant is excepted from discharge by 11 U.S.C. § 523(a)(8)(A). The Court further concludes that Plaintiff is not entitled to a "hardship discharge" of her student loan debt to Defendant under 11 U.S.C. § 523(a)(8)(B). Finally, the Court equitably defers Plaintiff's payments on the non-discharged loan for one year under 11 U.S.C. § 105(a).

### FINDINGS OF FACT

In 1989, Plaintiff obtained a $7,500 Stafford loan to fund medical school at the University of Florida. Defendant held the note. The United States government guaranteed this loan pursuant to the Higher Education Act of 1965. Plaintiff withdrew from medical school after completing less than one year.

In 1992 and 1993, Eric Lawson obtained approximately $22,000 in student loans to fund his education at the Art Institute of Seattle. N.B.D. Bank held these three notes. The United States guaranteed these loans pursuant to the Higher Education Act of 1965. Eric Lawson graduated with a degree in commercial photography in June 1994.

Plaintiff and Eric Lawson married shortly before Eric Lawson graduated.

On June 23, 1994, Plaintiff and Eric Lawson applied for a "spousal consolidation" of their respective student loans pursuant to the Higher Education Act. Plaintiff owed Defendant $4,148.91 prior to consolidation. Eric Lawson owed $21,148.91 to N.B.D. Bank prior to consolidation.

On June 23, 1994, Plaintiff and Eric Lawson signed a promissory note with Defendant, consolidating their student loan debts. The United States government guaranteed this new "spousal consolidation" loan pursuant to the Higher Education Act.

The consolidation lowered the Plaintiff and Eric Lawson's monthly student loan payments by $140.00 per month, from approximately $368.00 to approximately $228.00.

Plaintiff and Eric Lawson made the monthly payment from 1994 until 1999. During 1999 Defendant deferred repayment at the request of the unemployed Eric Lawson.

In September 1999, Plaintiff and Eric Lawson separated. Plaintiff relocated to Jacksonville, Florida in order to be closer to family. Plaintiff has been solely responsible for repayment on the consolidated loan since Eric Lawson's unemployment deferment expired in January 2000.

Plaintiff requested a deferment on her own behalf. Defendant declined to discuss deferment or flexible repayment with Plaintiff because Plaintiff was not the primary obligor on the consolidation. Defendant did not present any evidence as to why Eric Lawson was the primary obligor on the spousal consolidation and not Plaintiff, or both spouses. Defendant did not present any evidence as to the practical or legal significance of the distinction between primary and secondary borrower.

On March 24, 2000, Plaintiff voluntarily filed a Chapter 7 petition.

On May 25, 2000, Plaintiff divorced Eric Lawson. Plaintiff received custody of two children, now aged two years and four years. Pursuant to the terms of the Final Judgment of Dissolution of Marriage, Eric Lawson must pay $545 per month in child support.

Eric Lawson has not paid any court-ordered support. Plaintiff testified that she believes Eric Lawson is living in Tennessee. Plaintiff testified that she has be-

gun the interstate support enforcement process.

ThermoRetec Consulting Corporation ("ThermoRetec") currently employs Plaintiff full-time as a "contracts administrator." ThermoRetec pays Plaintiff $1,642.03 bi-weekly before taxes. Plaintiff pays $69.53 out of that amount for health insurance, $14.76 for voluntary life insurance for herself and for her children and contributes $20.30 to a 401k plan.

Plaintiff worked part-time as a tax preparer for H & R Block from January 2000 to May 2000. Plaintiff earned a gross salary of $3,578.00 during those months.

Plaintiff's Schedule J indicates that her monthly expenses amount to $3,857.01. That amount includes a $400.00 per month tithe to Plaintiff's church and the monthly payment to Defendant. Plaintiff makes occasional monthly $100.00 payments on the $4,200.00 balance of a $12,000.00 loan from her mother. Plaintiff "informally reaffirmed" the $4,200.00 balance on this debt after obtaining her Chapter 7 discharge on July 6, 2000.

Plaintiff has worked for ThermoRetec for approximately 10 years. Originally Plaintiff worked out of ThermoRetec's headquarters in New Hampshire. ThermoRetec originally agreed to employ Plaintiff for only six months after Plaintiff's move to Jacksonville, during which time ThermoRetec would train a replacement. However, ThermoRetec later verbally agreed to retain Plaintiff at her current position until a pending sale of ThermoRetec is complete. Plaintiff testified that the sale of ThermoRetec will be finalized in October, 2000, leaving Plaintiff unemployed with one month's severance pay.

Plaintiff testified that she has been unable to locate comparable employment in Jacksonville due to the uniqueness of her position with ThermoRetec. Plaintiff turned down one offer at $35,000.00 per year because it entailed a $5,000.00 pay cut and extensive overtime.

## CONCLUSIONS OF LAW

Plaintiff contends that her debt to Defendant falls outside the exception from discharge in 11 U.S.C. § 523(a)(8)(A). Plaintiff alternatively argues that she is entitled to a hardship discharge under 11 U.S.C. § 523(a)(8)(B). The Court raises on its own the issue of equitable modification under 11 U.S.C. § 105(a).

### 1. EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(8)(A)

The first issue facing the Court is whether or not a non-student co-obligor may discharge a student loan from which that co-obligor received no educational benefit. Plaintiff contends that a co-obligor may discharge the co-obligor's responsibility on a loan for another's education. Defendant contends that the plain language of and Congressional intent behind 11 U.S.C. § 523(a)(8)(A) do not allow for such a discharge.

Section 523(a)(8) provides in relevant part:

(a) Discharge under section 727 ... of this title does not discharge an individual from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

The majority of courts except from discharge all student loan debts, regardless of whether the debtor received any educational benefit from the loan. *See e.g. Salter v. Educational Resources Inst., Inc. (In re Salter)*, 207 B.R. 272, 275 (Bankr. M.D.Fla.1997). Most courts in the majority justify the exception by stating that the plain language of § 523(a)(8) denies a court discretion to look at the Congressional intent behind the phrase "educational benefit" in § 523(a)(8). *See Kentucky*

*Higher Educ. Assistance Auth. v. Norris (In re Norris)*, 239 B.R. 247 (M.D.Ala. 1999). Other courts in the majority look behind the language of the provision but except from discharge by finding that § 523(a)(8) was meant to protect the integrity of the student loan system at all costs, and that the discharge of non-student obligors and co-obligors constitutes a sufficient threat to the system. *See Salter,* 207 B.R. at 275. Judge Paskay summarized the majority position succinctly in *Salter:* "[T]his Court is satisfied that the proper focus should be on the kind of debt involved, rather than how the money was spent, or who was the borrower." *See id.*

A minority of courts discharge the student loan debt of non-student co-obligors. *See e.g. Bawden v. First Southern Fed. Savings and Loan (In re Bawden),* 55 B.R. 459 (Bankr.M.D.Ala.1985). These courts assert that the presence of the phrase "educational benefit" in § 523(a)(8) precludes a "plain language" holding. Further, these courts follow a different line of Congressional commentary and find that § 523(a)(8) was not meant to apply to non-student co-obligors. *See id.* at 460. The minority courts assert that little threat is posed to the student loan system by the discharge of non-student co-obligors, as the student co-obligor remains responsible for the debt after discharge. *See id.*

■ This Court elects to follow the majority position and excepts from discharge Plaintiff's debt stemming from the consolidation.

First, the Court is not convinced by the "plain language" argument espoused in *Norris.* The presence of the phrase "educational benefit" in § 523(a)(8) creates sufficient ambiguity for the Court to inquire into Congressional intent.

However, the Court finds that Congress' primary intent in enacting § 523(a)(8) was to preserve the integrity of the student loan system. The Court suspects that the willingness of some courts to discharge non-student co-obligors despite this oft-expressed motive can be traced to the popular scholarly conclusion that the enactment of § 523(a)(8) was unnecessary and ill-conceived.[1] However, this Court does not believe itself empowered to repeal or rewrite legislation law professors deem foolish.

■ The Court finds that all federally-guaranteed direct student loan obligations, as well as those indirect student loan obligations which serve to preserve the guaranteed loan system, are non-dischargeable under 523(a)(8)(A). Consolidation loans such as the one at issue are not peripheral but are important to the survival of guaranteed student loan programs. Consolidations lower monthly payments and thus preserve the health of the system by making default less likely. It is not for the Court to endanger the guaranteed student loan system under a questionable minority spin of the intent behind § 523(a)(8)(A).

Therefore, the Court excepts from discharge the whole of Plaintiff's consolidated student loan claim under § 523(a)(8).

## 2. HARDSHIP DISCHARGE UNDER 11 U.S.C. § 523(a)(8)(B)

The Court now turns to the issue of whether Plaintiff is entitled to a hardship discharge of the consolidation debt under 11 U.S.C. § 523(a)(8)(B). Plaintiff contends that excepting the student loan debt to Defendant would constitute an undue hardship upon Plaintiff and upon her dependent children. Defendant contends that Plaintiff is not entitled to a hardship discharge because Plaintiff has not shown the requisite level of hardship and because

---

1. A significant number of studies have shown that Congress was tilting at windmills when it enacted § 523(a)(8). *See e.g.* Kosel, *Running the Gauntlet of "Undue Hardship"—The Discharge of Student Loans in Bankruptcy,* 11 Golden Gate U.L.Rev. 457, 462 (1981) (concluding that abuse of the student loan system through bankruptcy was "virtually nonexistent").

Plaintiff, by tithing to her church, has not minimized expenses and maximized economic resources as required by § 523(a)(8)(B).

A debtor must show more than "garden variety" hardship to be eligible for a hardship discharge—after all, if inability to pay bills and the like constituted hardship, then every student loan debtor in bankruptcy would be eligible. *See Cadle Company v. Webb (In re Webb)*, 132 B.R. 199, 201 (Bankr.M.D.Fla.1991). The hardship discharge is to be narrowly construed and rarely exercised. *See id.* A debtor must show financial resources allow the debtor to live at or barely above the poverty line as a consequence of student loan payments. *See id.* The basis for a debtor's hardship must be long-lasting if not permanent. *See id.* Generally, unless a debtor is physically handicapped, a debtor must demonstrate a total foreclosure of job prospects in debtor's field of expertise. *See id.* at 202.

Plaintiff has not demonstrated the necessary depth and length of hardship in order to be eligible for a hardship discharge under § 523(a)(8)(B). The nature of Plaintiff's hardship is both too prospective and too prospectively temporary to satisfy the strict test for hardship discharge. ThermoRetec still employs Plaintiff, and still pays Plaintiff a substantial salary. Plaintiff cannot say exactly when she might lose her job. The Court is convinced that it may not grant a debtor discharge because of a hardship which does not exist at the time Plaintiff requests such discharge.

Additionally, Plaintiff is neither disabled nor permanently foreclosed from acquiring similar employment. Plaintiff received a $35,000.00 employment offer. This offer satisfies the Court that Plaintiff is not permanently foreclosed from comparable employment.

The Court finds that Plaintiff is not entitled to a hardship discharge because Plaintiff did not demonstrate the requisite current and permanent hardship. Therefore, it is unnecessary to address Defendant's thorny contention that Plaintiff is not entitled to a hardship discharge because Plaintiff tithes to her church.

### 3. EQUITABLE MODIFICATION UNDER § 105(a)

The Court finally turns to the question of whether or not Plaintiff is entitled to a deferment of the consolidation debt under 11 U.S.C. § 105(a). Section 105(a) provides, in relevant part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title...

11 U.S.C. § 105(a).

A bankruptcy court may not restructure or partition student loan debt for "partial hardship" under § 523(a)(8)(B) unless such debt is divisible in the contract sense. *See Hinkle v. Wheaton College (In re Hinkle)*, 200 B.R. 690 (Bankr. W.D.Wash.1996). However, a bankruptcy court may modify a non-dischargeable student loan under the court's § 105(a) equity power if some hardship exists and some injustice would result. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir.1998) (remanding proceeding to bankruptcy court to determine fractional discharge); *see also Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 307 (3d Cir.1995) (holding that fractional discharge not warranted because no hardship existed at all); *see also In re Roberson*, 999 F.2d 1132, 1138 (7th Cir. 1993) (upholding bankruptcy court's deferment of student loan payments for temporary hardship). These courts reasoned that an all-or-nothing approach to § 523(a)(8)(B) would encourage student loan debtors to borrow less responsibly and pursue employment less enthusiastically in an effort to manufacture hardship sufficient for total discharge. *See Great Lakes Higher Educ. Corp. v. Brown (In re Brown)*, 239 B.R. 204, 210 (S.D.Cal.1999).

Modification does not defeat Congressional intent because such strategems endanger guaranteed loan programs more than deferment or partial discharge. *See id.*

This Court held that student loan payments may be deferred for six months and reduced in amount to alleviate a temporary hardship in *Webb*, 132 B.R. at 202. In *Webb*, the debtor did not qualify for a full § 523(a)(8)(B) hardship discharge because she was not handicapped or otherwise foreclosed from obtaining similar future employment. *See id.* at 200. The debtor was unemployed and unable to support her three minor children at the time of filing. *See id.* Additionally, the debtor's ex-husband failed to pay any court-ordered child support. *See id.* The Court found that the burden on the debtor's children constituted sufficient equitable grounds to defer execution on debtor's assets for six months and to establish a schedule which greatly reduced the monthly payment on the student loan debt. *See id.* at 202. Judge Proctor declared that "[i]t is within the proper exercise of the equitable power of this Court to set forth a payment schedule which takes into account the defendant's [debtor's] temporary severe difficulties." *See id.*

▉ The Court finds embedded in *Webb* and *Hornsby* a two-part test for the invocation of § 105(a) in student loan situations. First, a debtor must show some hardship, which of course does not rise to the level of qualifying for a hardship discharge under § 523(a)(8)(B). Second, a debtor must show that some specific injustice will result if the Court refuses to intervene.

▉ The Court finds that Plaintiff demonstrated hardship sufficient to trigger the Court's § 105(a) equity power. Plaintiff will be unemployed sometime in the next two months. Plaintiff will receive one month's severance pay. After that period, Plaintiff will experience severe hardship due to her unemployment and due to the diligence of Eric Lawson in avoiding court-ordered child support obligations. Plaintiff's predicament is virtually identical to the situation of the debtor in *Webb*. Both debtors are unemployed (or soon-to-be-unemployed) single mothers with small children and deadbeat ex-husbands.

It is instructive to note that Eric Lawson, currently unemployed and apparently nomadic, may qualify for a full hardship discharge. Eric Lawson's unpaid child support burden might be such a financial strain as to amount to hardship enough to get his share of the consolidation discharged. The further Eric Lawson falls behind on his child support obligation, the bigger that debt grows and the more likely it becomes that Lawson will qualify for a hardship discharge. Yet Plaintiff cannot discharge the consolidation loan payments because she has employment for a short time longer and job prospects sometime in the future. This is exactly the inequitable scenario that courts have sought to avoid by shelving the all-or-nothing approach to § 523(a)(8).

The Court further finds that Plaintiff showed that a specific injustice would be avoided by a deferment of her loans under § 105(a). A one-year deferment of Plaintiff's loan payments remedies Defendant's arbitrary refusal to discuss a deferment or alternate payment plan with Plaintiff. Defendant gave a deferment on this same loan to model citizen Eric Lawson in 1999. Defendant would not consider extending the same courtesy to Plaintiff. Plaintiff conceded that she could pay the whole debt, as she has for the past year, if the Defendant would make some concession to Plaintiff's impending unemployment. However, Defendant would not deal with Plaintiff because Plaintiff unwittingly signed on as a secondary borrower on the consolidation. Defendant failed to adequately explain the significance of this technical distinction. The Court is convinced that Defendant employed this formality solely to foreclose Plaintiff from acquiring a deferment.

**520**

Negotiation and compromise are central to the bankruptcy process, and are essential to desirable and equitable bankruptcy outcomes. Defendant disrespects and abuses the bankruptcy system by arbitrarily refusing to work with, or at least listen to, the Plaintiff. Defendant seems to enjoy playing the unsympathetic schoolyard bully more than it enjoys the thought of repayment, however deferred. Such counterproductive and uncooperative behavior is anathema to the equitable spirit of bankruptcy.

Therefore, the Court exercises its § 105(a) equity power and defers Plaintiff's student loans for one year. This deferment runs from October 15, 2000, by which time Plaintiff testified she will likely be unemployed, until October 14, 2001. During the year from October 15, 2000 to October 14, 2001, no interest will accrue on Plaintiff's student loans. Plaintiff may pay down the principal during this period whenever she desires. The Court further orders that Plaintiff be given all the rights and responsibilities of a primary borrower on the consolidation loan. If Plaintiff must bear the burden of this loan, then Plaintiff must be given the same opportunities for deferment and renegotiation that any student obligor would receive.

### CONCLUSION

First, the Court finds that Plaintiff's student loan debt is excepted from discharge under 11 U.S.C. § 523(a)(8)(A). Second, the Court finds that Plaintiff's hardship is not so definite or permanent as to qualify Plaintiff for a § 523(a)(8)(B) hardship discharge. Finally, the Court defers payments and interest accrual on Plaintiff's debt to Defendant for one year under 11 U.S.C. § 105(a).

The Court will enter a separate Judgment in accordance with these Findings of Fact and Conclusions of Law.