In re Patricia D. BROSNAN, Debtor.

**Patricia D. Brosnan, Plaintiff,**

v.

**American Education Services, and The Education Resources Institutes, Inc., Defendants.**

**Bankruptcy No. 04–000175–3F7. Adversary No. 04–135.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 20, 2005.

Patricia D. Brosnan, West Palm Beach, FL, for Plaintiff.

Jacob A. Brown, Jacksonville, FL, Christie D. Arkovich, Tampa, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon a complaint to determine the dischargeability of a student loan debt pursuant to 11 U.S.C. § 523(a)(8). On January 8, 2004 Plaintiff filed a petition for Chapter 7 bankruptcy protection and subsequently received a Chapter 7 bankruptcy discharge. On March 31, 2004 Plaintiff filed a complaint seeking to discharge her student loan obligations. The Court conducted a trial on November 18, 2004. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Plaintiff applied for and received student loans to fund her education at the University of Miami School of Law where she earned a juris doctor degree in 1995. As of the trial date, Plaintiff owed a combined total of $105,142.18 to American Education Services ("AES") and The Educational Resources Institute ("TERI") on her student loans. Since graduating from law school, Plaintiff has made payments totaling $54,477.04 on her student loans. Currently Plaintiff is an attorney practicing law as a sole practitioner. Plaintiff is a member of the Florida State bar as well as the South, Middle and North Florida Federal bars. Plaintiff is 54 years old without any dependents to support.

Plaintiff testified that she suffers daily from flu-like symptoms, allergies, migraine headaches, a sleep disorder, incontinence, arthritis, pain and fatigue which prevent her from working on a regular basis. However, Plaintiff concedes that she has

not received medical diagnoses for the above mentioned ailments. Plaintiff testified she takes prescription medications for the symptoms. However, the medicine does not provide her with the necessary relief to be gainfully employed. As a result of the pain, fatigue and other ailments, Plaintiff testified that she is unable to work full time. In fact, Plaintiff contends she can only work sporadically and at most ten hours a week. Other than her testimony, Plaintiff presented no evidence that she suffers from any of the medical conditions described or that they negatively impact her ability to work.

While practicing as a sole practitioner, Plaintiff reported a gross income of $75,083.45 for 2002. After deducting $37,405.24 for expenses, Plaintiff reported her net income for 2002 as $37,678.02. In 2003, Plaintiff earned a gross business income of $24,395.73. Plaintiff took tax deductions totaling $16,725.40 leaving her with a net income of $7,670.33.

Plaintiff set forth an estimated profit and loss statement for 2004. Plaintiff asserts that her projected gross business income will be $19,444.21, her annual net income will be $9,732.04 and her net monthly income will be $719.14. ($9,732.04 / 12 mos. = $811.03—$91.86(estimated taxes) = $719.14). At her deposition, Plaintiff testified she currently handles four or five cases which includes the matter before the court. Plaintiff testified that her current monthly expenses, excluding any student loan payments, total $2,030.00. Plaintiff asserts that she does not have any funds available to allocate toward her student loan debt because her minimal expenses exceed her anticipated income.

In the fall of 2003, three or four months before she filed for bankruptcy, Plaintiff purchased a 2004 Toyota 4–Runner SR5. The purchase price is disputed but Plaintiff purchased the vehicle for at least $26,000.00 and at most $29,000.00. Plaintiff pays approximately $842.00 per month for the vehicle, which includes 1) $559.00 for the car payment, 2) $152.00 for the car insurance and 3) $131.00 for transportation costs.[1] However, Plaintiff charges her business for 70% of the vehicle's cost, listing the vehicle as a business expense on her income tax return. Therefore, Plaintiff pays approximately $252.60 a month for the vehicle expenses from her net income and charges her business $589.40 a month for the remainder of the vehicle's expense. Regardless of the distribution of costs, the cost of the vehicle is deducted from Plaintiff's monthly income, whether it be net or gross income.

Plaintiff asserts that the purchase of the 4–Runner was necessary for three reasons. First, Plaintiff contends that entering and exiting cars causes her pain and discomfort, but the height of the 4–Runner allows her to enter and exit the vehicle without as much discomfort. Second, if she is feeling ill, Plaintiff can lie in the back seat and rest while away from home. Lastly, Plaintiff testified she needs a reliable car, and she can depend on the 4–Runner.

Although Plaintiff has sought and received forbearances and deferments of her student loans at various times throughout the loan repayment period, she has not applied for consolidation of her loans in order to reduce the monthly payment. An AES representative testified that Plaintiff is eligible for consolidation of her loans. Several consolidation plans were offered to Plaintiff by AES, which also encompassed payments to TERI. The consolidation

---

1. Plaintiff's evidence provides different prices for her car and insurance payments. The total fluctuation in price is $20.00.

plans presented by AES would allow Plaintiff to make monthly payments ranging from $529.39 to $714.06 depending on whether Plaintiff selected an additional 20 or 30 years to pay her student loans. Furthermore, Plaintiff did not seek a discharge of her student loans due to total and permanent disability from AES or TERI prior to seeking a discharge in this Court.

### *CONCLUSIONS OF LAW*

Plaintiff contends that her debt to AES and TERI is not excepted from discharge under § 523(a)(8) which provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; 11 U.S.C. § 523(a)(8).

■ In *Hemar Ins. Corp. of America v. Cox (In re Cox)*, 338 F.3d 1238, 1240 (11th Cir.2003) the Eleventh Circuit Court of Appeals adopted the definition of "undue hardship" as defined by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Serv.*, 831 F.2d 395 (2d Cir.1987). Plaintiff concedes that the *Brunner* standard applies in this case. The *Brunner* test for the undue hardship exception to § 523(a)(8) requires a debtor to prove that:

> (1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that she has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. When determining whether or not undue hardship exists a court must decide "... how much personal sacrifice society expects from individuals who accepted the benefits of guaranteed student loans but who have not obtained the financial rewards they had expected to receive as a result of their educational expenditures." *Pincus v. Graduate Loan Center*, 280 B.R. 303, 315 (Bankr.S.D.N.Y.2002) (citations omitted).

■ The first issue the Court must address is whether, given her current income and expenses, Plaintiff can maintain a "minimal" standard of living if forced to repay her student loans. A debtor can qualify for a discharge of her student loans, only if she demonstrates financial resources which allow her "to live at or barely above the poverty line as a consequence of student loan payments." *Lawson v. Sallie Mae, Inc.*, 256 B.R. 512, 518 (Bankr.M.D.Fla.2000) (citations omitted).

Plaintiff's expenses would fall under the definition of minimal expenses if not for the 4–Runner payment. The Court cannot find that a monthly car expense of $842.00 for a 4–Runner qualifies as a minimal expense. Although the $842.00 encompasses the car payment, insurance payment and transportation costs, a debtor should be able to operate a car for much less than $842.00 a month.

■ Additionally, Plaintiff must demonstrate that she has maximized her ability to produce adequate income to pay her expenses and her student loans. *Perkins v. PHEAA,* 318 B.R. 300, 305 (Bankr. M.D.N.C.2004) (citations omitted). After deducting substantial expenses, Plaintiff reported a net income of $37,678.21 for 2002 indicating that she can in fact successfully practice law as a sole practitioner. Plaintiff testified that she currently only carries a case load of four or five cases. In order for Plaintiff to be financially successful, she must carry more than a handful of cases. Plaintiff argues that she has been unable to secure a financially rewarding career in the legal arena. However, because Plaintiff did not demonstrate that she was unable to secure employment in other fields, the Court finds that Plaintiff has not maximized her income. Because Plaintiff has neither minimized her expenses nor maximized her income, she has not met prong one of the *Brunner* test.

■ The second prong of the *Brunner* test requires that Plaintiff prove additional circumstances exist which prevent her from maintaining a minimal standard of living for a significant portion of the repayment period if she is required to repay the student loans. More than a "garden variety" of hardship is required to meet the high standard set forth in § 523(a)(8). *Lawson,* 256 B.R. at 518 (citations omitted). Moreover, a debtor makes the voluntary choice to take advantage of government financed student loans. *In re Cox,* 338 F.3d at 1242 (citations omitted). If the education received as a result of the student loans does not produce the financial benefits a debtor anticipated, the debtor rather than the government should accept the consequences of the decision to borrow. *Id.*

■ In order to prove the extraordinary circumstances necessary to meet prong two of the *Brunner* test, Plaintiff must present evidence which corroborates her own testimony regarding her medical difficulties. *Folsom,* 315 B.R. at 165 (citations omitted). Although evidence need not consist of extensive expert testimony, it must corroborate the allegations testified to by the debtor. *Id.* The Court has previously found that a debtor's testimony alone cannot establish prong two of the *Brunner* test if the debtor's health is at issue. *Id.*

Plaintiff presented no evidence to corroborate her testimony regarding her ailments. Plaintiff merely testified to the symptoms she suffered and stated those symptoms prevented her from being gainfully employed. No other evidence suggests that Plaintiff suffers from an additional circumstance which will interfere with her employment for a significant portion of the repayment period. Therefore, the Court finds Plaintiff did not present sufficient evidence to establish prong two of the *Brunner* test.

■ The third prong of the *Brunner* test requires the Court to determine whether or not a debtor exhibits good faith in regards to payment of her student loan debt. Plaintiff has paid $54,477.04 of her student loan debt. At first glance it would appear Plaintiff has exhibited good faith by paying a substantial portion of her student loan debt. However, the good faith analysis does not end here because, despite Plaintiff's partial payment of her student loan obligation, she is still requesting a discharge of over $100,000.00. A factor the Court must consider when determining whether Plaintiff exhibited good faith when seeking discharge of her student loans is her "effort—or lack thereof—to negotiate a repayment plan." *U.S. Dept. of Educ. v. Wallace,* 259 B.R. 170, 185 (C.D.Cal.2000) (citations omitted). Plain-

tiff argues the additional circumstance preventing her from a financially secure future is her debilitating health. However, Plaintiff did not seek a loan discharge due to total and permanent disability from AES or TERI prior to seeking a discharge in this Court.[2] Nor did the Plaintiff attempt to negotiate her payment schedule with AES or TERI to reduce her monthly payment before seeking a discharge in this court. "A debtor's obligation to make 'good faith' efforts to repay his [or her] educational loans is not extinguished with the filing of an adversary proceeding in bankruptcy." *Wallace*, 259 B.R. at 185. Since filing bankruptcy, Plaintiff has not tendered a payment on her student loans nor has she attempted to negotiate a lower loan payment. *See id.* Therefore, Plaintiff does not meet prong three of the *Brunner* test.

### CONCLUSION

Because Plaintiff failed to satisfy the undue hardship test set forth in *Brunner* and adopted in *Cox*, Plaintiff is not entitled to a discharge of her student loans. The Court will enter a separate judgment in accordance with these Findings of Fact and Conclusions of Law.

### JUDGMENT

This proceeding came before the Court upon a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(8). Upon Findings of Fact and Conclusions of Law separately entered, it is

**ADJUDGED:**

1. Judgment is entered in favor of Defendants, American Education Services and The Education Resources Institute, Inc., and against Plaintiff, Patricia D. Brosnan.

2. Plaintiff's debt to Defendants is excepted from Plaintiff's discharge and the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

---

**2.** If a borrower applies for and meets the eligibility requirements establishing total and permanent disability, the Secretary of Education places the borrower in a conditional discharge status for up to three years and suspends efforts to collect on the debt; if the borrower continues to meet the eligibility requirements for total and permanent disability at the end of the three year conditional discharge period, the Secretary discharges the borrower's debt. *See* 34 C.F.R. 685.213(a)(2004).