In re Anna S. LYKOUDIS, Debtor.

Anna S. Lykoudis, Plaintiff,

v.

Florida Department of Education, Educational Credit Management Corporation, and Hemar Insurance Corporation of America, Defendants.

Bankruptcy No. 8:04–bk–4505–PMG.
Adversary No. 8:04–ap–244–PMG.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 22, 2007.

Nicholas E. Karatinos, St. Petersburg, FL, Perry G. Gruman, Tampa, FL, for Plaintiff/Debtor.

Patricia A. Willing, Assistant United States Attorney, Jeffrey C. Hakanson, Patti W. Halloran, Gibbons Cohn Neuman

Bello Segall & Allen, Tampa, FL, Charles J. Crist, Jr., Attorney General, State of Florida, John D. Eaton, Berger Singerman PA, Ft. Lauderdale, FL, Pamela Teixeira Lutton, Office of the Attorney General, Tallahassee, FL, for Defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing in the above-captioned adversary proceeding.

The Debtor, Anna S. Lykoudis, commenced this proceeding by filing a Complaint to Determine Dischargeability of a Debt. In the Complaint, the Debtor asserts that certain educational loans listed on her schedules should be discharged in her Chapter 7 case, because excepting such debts from discharge would impose an undue hardship on her and her dependents within the meaning of § 523(a)(8) of the Bankruptcy Code.

### Background

The Debtor graduated from the University of South Florida in 1995. (Transcript, p. 19). She financed her undergraduate education in part by two separate student loans. The balance on the student loan owed to Educational Credit Management Corporation (ECMC) was $131,370.73 as of September 10, 2006. (Doc. 176, p. 3). The balance on the student loan owed to the Florida Department of Education (FDOE) was $21,421.45 as of September 19, 2006. (Doc. 184, p. 2).

The Debtor graduated from Stetson Law School in May of 1998. (Transcript, p. 21). She financed her legal education in part by four separate student loans made under the Lawloans Program. The original amounts disbursed on the loans were $5,000.00, $12,960.00, $5,345.00, and $7,500.00, respectively. (Doc. 179, p. 3). The Lawloans obligations are currently held by Help Service Group, Inc., successor in interest by assignment to Hemar Insurance Corporation of America. Hemar Insurance Corporation of America is a nonprofit institution within the meaning of § 523(a)(8) of the Bankruptcy Code, provided only that it was organized for some purpose other than making a profit. *In re Rodriguez*, 319 B.R. 894 (Bankr.M.D.Fla.2005)(quoted in *In re Drumm*, 329 B.R. 23, 33 (Bankr.W.D.Pa. 2005)).

The Debtor passed the Florida Bar Examination and became a licensed attorney in 1998.

Following a short period of employment with a small firm known as Paul & Associates, the Debtor and another attorney opened a law office in Tampa in April of 1999. The Debtor's partner left the firm within a year, and the Debtor continued to operate the law office as a sole practitioner.

On August 22, 2001, the Debtor was involved in an automobile accident. (Transcript, p. 32). The Debtor testified that she suffered injuries to her neck, arms, shoulders, lower back, and knees as a result of the collision. (Transcript, pp. 33, 37).

The Debtor was treated at a Walk-in Clinic shortly after the accident. (Transcript, p. 33). Between 2002 and 2004, she was further treated by a chiropractor, a psychiatrist, and a neurologist. (Transcript, pp. 37, 56–57). The conditions for which the Debtor sought treatment included headaches, a jaw disorder, weakness in her arms, numbness and muscle spasms in her neck and shoulders, fatigue, depression, and anxiety.

The Debtor testified that she became increasingly disabled in the months and

years following the automobile accident. She testified, for example, that she attempted to maintain her office schedule, but that she was unable to function, and therefore began to stay at home. (Transcript, p. 36). According to the Debtor, her condition was erratic: She would be able to work thirty hours in a particular week, but unable to work at all the following week. Her time away from the office, of course, resulted in cancelled appointments and rescheduled hearings. (Transcript, p. 42).

On May 20, 2003, the Debtor received an Admonishment for Minor Misconduct from The Florida Bar "for violations including a lack of competence, diligence, communication and excessive fees." The admonishment arose from six separate grievances that had been filed against her by former clients.

In January or February of 2004, the Debtor closed her law office. (Transcript, pp. 45, 140).

On March 9, 2004, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

In June of 2004, the Debtor moved to an area near Houston, Texas. (Transcript, p. 82).

On August 16, 2004, the Debtor submitted her Petition for Disciplinary Resignation to The Florida Bar and the Florida Supreme Court. The Petition recited eight Complaints that had been filed against the Debtor by former clients. The resignation was submitted "with leave to reapply after a period of three years." (Debtor's Exhibit 7).

On October 25, 2005, the Supreme Court of Florida entered an Order granting The Florida Bar's Petition for Contempt and Order to Show Cause, and permanently disbarred the Debtor from the practice of

law in the State of Florida. (Debtor's Exhibit 11; Transcript, p. 70).

The Debtor currently lives in Texas in a home owned by her boyfriend, Vasilis Zafiris. The Debtor and Mr. Zafiris have a daughter who born in January, 2005. The Debtor claims that she is unable to work, and presently receives no income and owns no significant assets. (Transcript, pp. 74–75). Her sole financial support is provided by Mr. Zafiris. (Transcript, p. 78).

## Discussion

■ In her Complaint, the Debtor asserts that the student loan obligations owed to the Defendants should be discharged in her Chapter 7 case, because excepting such debts from discharge would impose an undue hardship on her within the meaning of § 523(a)(8) of the Bankruptcy Code.

Section 523(a)(8), as applicable at the time that the Debtor filed her petition, provided:

**11 USC § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend,

*unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.*

11 U.S.C. § 523(a)(8)(Emphasis supplied). "Congress intended to make it difficult for debtors to obtain a discharge of their stu-

dent loan indebtedness," and have therefore established "undue hardship" as "the only possible avenue for a debtor to obtain a discharge of student loan indebtedness." *In re Cox,* 338 F.3d 1238, 1243 (11th Cir. 2003).

■ The term "undue hardship" generally contemplates unique, extraordinary, or severe circumstances. *In re Mosley,* 330 B.R. 832, 840 (Bankr.N.D.Ga.2005). "More than a 'garden variety' of hardship is required to meet the high standard set forth in § 523(a)(8)." *In re Brosnan,* 323 B.R. 533, 538 (Bankr.M.D.Fla.2005)(citing *Lawson v. Sallie Mae, Inc.,* 256 B.R. 512, 518 (Bankr.M.D.Fla.2000)).

■ In *In re Cox,* 338 F.3d 1238, 1240 (11th Cir.2003), the Eleventh Circuit Court of Appeals adopted the standard for establishing "undue hardship" that previously had been set forth by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2d Cir.1987). The standard requires the application of a three-part test commonly known as the *Brunner* test:

> [to establish "undue hardship," the debtor must show] (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396(quoted in *In re Cox,* 338 F.3d at 1241).

■ The debtor has the burden of proving the existence of undue hardship by a preponderance of the evidence. *In re Mosley,* 330 B.R. 832, 840 (Bankr.N.D.Ga.2005)(citing *Grogan v. Gar-*

*ner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Each of the three elements of the *Brunner* test must be established. The "failure to prove any one element is fatal to the claim." *In re Mosley,* 330 B.R. at 840(Citations omitted).

The Court has applied the three elements of the *Brunner* test to the Debtor's circumstances, and finds that the student loan obligations owed by the Debtor to the Defendants are not dischargeable under § 523(a)(8) of the Bankruptcy Code.

### A. Current income and expenses

■ Under the first prong of the *Brunner* test, the Debtor must show that she cannot maintain, based on her current income and expenses, a minimal standard of living for herself and her dependents if she is forced to repay the student loans.

The Debtor is currently unemployed and receives no income. (Transcript, pp. 75, 79). She has not filed an income tax return since 2000. (Transcript, p. 78). She has a daughter who was born after her bankruptcy petition was filed, and who was approximately twenty months old at the time of trial. (Transcript, p. 77).

The Debtor lives with her boyfriend in his home in Texas. Her boyfriend is the sole source of financial support for the Debtor and their daughter, and he pays all of the household expenses. (Transcript, pp. 75–78).

The Debtor asserts that she owns no significant assets. She previously owned a home in Hillsborough County, Florida, which was sold in 2004 while her bankruptcy case was pending. The Debtor received net proceeds from the sale in the approximate amount of $6,000.00, which she spent on medical and moving expenses. (Transcript, p. 24). The Debtor's vehicle has been repossessed. (Transcript, p. 54). She does not presently own a car, and has

no bank account in her own name. (Transcript, p. 75).

The Debtor is not attempting to seek employment because she believes that she is unable to work. Additionally, she has not applied for social security disability benefits or other public assistance because she believes that she is not eligible for any such programs. (Transcript, pp. 79–81). The Debtor believes that she would be homeless if her boyfriend were not supporting her. (Transcript, p. 80).

The Court is satisfied that the Debtor does not currently own any assets of significant value, and that she is entirely dependent on her boyfriend for financial support at the present time. The Court is also satisfied that the Debtor is unemployed and receives no regular earnings or income.

■■ The Court is not persuaded, however, that the Debtor "has maximized her ability to produce adequate income to pay her expenses and her student loans." *Perkins v. PHEAA*, 318 B.R. 300, 305 (Bankr.M.D.N.C.2004)(quoted in *In re Brosnan*, 323 B.R. at 538). In order for student loans to be discharged, a debtor should show that he has done everything he can to minimize expenses and maximize income. *In re Mallinckrodt*, 260 B.R. 892, 900 (Bankr.S.D.Fla.2001)(citing *In re Ammirati*, 187 B.R. 902, 907 (D.S.C.1995)). In other words, under the first prong of the *Brunner* test, the Court must evaluate whether the debtor has minimized her expenses and maximized her personal and professional resources. *In re Hambacher*, 2005 WL 3307063, at *3 (Bankr.M.D.N.C.); *In re Mosko*, 2005 WL 2413582, at *2 (Bankr.M.D.N.C.)(citing *In re Murphy*, 305 B.R. 780, 793 (Bankr.E.D.Va.2004)).

The Debtor claims that her health has steadily deteriorated since the automobile accident in 2001, and that she is currently unemployable because of her continuing fatigue and anxiety.

The Court acknowledges, of course, that the Debtor has been disbarred and cannot presently work as an attorney in the state of Florida.

Nevertheless, the Debtor met her current boyfriend and had a child more than two years after the accident. She concedes that she resumed driving an automobile approximately nine months after the accident, and that she is presently able to drive a car. (Transcript, p. 147). The Debtor also concedes that she cares for her young daughter and another child on a daily basis.

Further, the Debtor traveled from Texas to Florida for the trial in this proceeding, and testified lucidly and articulately for an extended period of time. During her examination on the witness stand, the Debtor followed the line of questioning without difficulty, supplied intelligent responses to the questions, and did not require any substantial accommodation for her medical condition.

Despite her apparent ability to function at a reasonably high level, however, the Debtor has not attempted to find a position as a paralegal, or to use her education or other experience to obtain employment, (Transcript, pp. 125–26). In fact, there is no evidence that the Debtor is attempting to find any employment at all, either in an entry-level position or in a position that would adapt to her physical limitations.

Finally, the Debtor has not sought professional guidance regarding whether she would qualify for social security disability benefits, or whether she is eligible for financial assistance from any other program or agency. (Transcript, p. 150).

Under these circumstances, the Debtor has failed to prove that she cannot maintain a minimal standard of living for her

and her daughter if she is required to repay the student loans. She did not show that she has maximized her income-producing ability or resources, and therefore failed to satisfy her burden of proof under the first prong of the *Brunner* test.

### B. "Likely to persist"

The second prong of the *Brunner* test requires the Debtor to show that additional circumstances exist indicating that her current state of affairs is likely to persist for a significant portion of the repayment period of the student loans.

 Under this prong, the Debtor must show that she has a condition that impairs her ability to work, and that the condition will persist for a significant portion of the loan repayment period. "Generally, courts focus on whether the debtor will be completely unable to pay his student loan debt in the future for reasons beyond his control." *In re Mosley*, 330 B.R. 832, 842 (Bankr.N.D.Ga.2005). A finding under this prong "requires the presence of unique or extraordinary circumstances that would render it unlikely that the debtor would ever be able to honor his obligations." *In re Folsom*, 315 B.R. 161, 165 (Bankr.M.D.Fla.2004).

 In this case, the Debtor testified at length regarding her current condition:

Well, today, I'm not going to fool myself as to my limitations, and I do still have pain, even wash—you know, just washing the dishes and folding the laundry is painful for me.

I'm fatigued, I feel weak, I'm very tired, I have to sleep in the day, another two to three hours. And I still take Tylenol and that kind of thing for the—I wake up with pain. I go to sleep with pain. But resting and being rather sedentary is helping keep the pain at a moderate level.

(Transcript, pp. 50–51). The Debtor further testified that she cannot lift heavy weights (Transcript, p. 51), that she continues to have headaches (Transcript, p. 52), that she cannot concentrate (Transcript, p. 53), and that she has difficulty leaving the house due to feelings of anxiety and panic (Transcript, pp. 52, 55).

Finally, the Debtor testified that she cannot work, either full-time or part-time:

Because I suffer with fatigue, I suffer with headaches, I still have pain and weakness. But, most importantly, the anxiety of leaving the house and getting in the car and going somewhere and having to be concentrating and responsible and all of that. I'm not—it's outside of my control unfortunately. And I suffer. I end up not going.

(Transcript, p. 92). According to the Debtor, she cannot work at the present time, and she will not be able to work in the foreseeable future. (Transcript, p. 87).

The Debtor did not present the testimony of any expert witnesses or medical professionals to support her contentions. On the contrary, the only medical evidence admitted by the Debtor consists of a file that was maintained by Mary Stedman, M.D., of Stedman Clinical Trials. (Debtor's Exhibit 2). Dr. Stedman is a psychiatrist who treated the Debtor commencing in 2002.

Dr. Stedman's file is comprised of only two reports prepared by third parties who were not identified at trial, certain handwritten notes of phone calls or meetings with the Debtor, and a laboratory report. Significantly, the documents in the file range in time from early 2002 until February 24, 2004. There are no medical records in the file that relate to the Debtor's condition in the three years since February of 2004.

 Generally, a debtor's medical disability may constitute extraordinary circumstances that satisfy the second prong of the *Brunner* test. "However, bankruptcy courts have held that a debtor whose additional circumstances involve the debtor's health or medical condition must present more than the debtor's unsupported testimony." *In re Folsom*, 315 B.R. at 165 (citing *In re Swinney*, 266 B.R. 800, 805 (Bankr.N.D.Ohio 2001)).

In order to prove the extraordinary circumstances necessary to meet prong two of the *Brunner* test, Plaintiff must present evidence which corroborates her own testimony regarding her medical difficulties. *Folsom*, 315 B.R. at 165(citations omitted). Although evidence need not consist of extensive expert testimony, it must corroborate the allegations testified to by the debtor. *In re Brosnan*, 323 B.R. at 538. "A debtor who seeks a hardship discharge based on a medical condition must present more than the debtor's testimony as to the existence of the medical condition and its effect on the debtor's ability to maintain employment in order to satisfy the second prong of *Brunner*". *In re Folsom*, 315 B.R. at 165.

The Debtor did not satisfy the second prong of the *Brunner* test in this case. The Debtor relied almost exclusively on her own testimony to support her contention that she is unable to work because of a serious medical condition. As set forth above, the Debtor primarily asserts that she suffers from nonspecific pain, fatigue, and anxiety that prevent her from leaving her home.

The only independent evidence submitted by the Debtor is an abbreviated medical file produced by the Debtor's psychologist. The file is neither thorough nor extensive, and includes fewer than ten handwritten notes and several external reports. The Debtor did not offer any expert testimony to interpret the notes or reports, or even to verify the handwriting contained in the file. Further, all of the documents are remote in time, with the most recent document bearing a date of almost three years prior to the trial in this case.

 Dr. Stedman's file is not probative either of the Debtor's current condition, or the Debtor's contention that the condition is "likely to persist" into the significant future. The Court cannot undertake the role of a medical professional to determine the Debtor's prognosis. The Court can analyze only the evidence that is before it and, in this case, the evidence is insufficient to determine that the Debtor suffers from a serious medical condition that will make it impossible for her to maintain future employment. *In re Burton*, 339 B.R. 856, 881 (Bankr.E.D.Va.2006).

The Debtor did not present substantial credible evidence that she has a debilitating medical condition that will continue for a significant portion of the loan repayment period, and therefore failed to satisfy the second prong of the *Brunner* test.

### C. Good faith efforts to repay

 Under the third prong of the *Brunner* test, the Debtor must show that she has made good faith efforts to repay the student loans. Generally, this prong measures a debtor's efforts to obtain employment, maximize income, minimize expenses, and participate in alternative repayment programs. *In re Mosley*, 330 B.R. at 847; *In re Mallinckrodt*, 260 B.R. at 903.

 In this case, the Debtor does not appear to incur unreasonable expenses. Nevertheless, the Debtor has failed to satisfy the third prong of the *Brunner* test because she has not shown that she at-

tempted to generate any income, or that she meaningfully explored alternative payment options.

The Debtor acknowledges that she has never complied with the repayment terms required by the student loans.

> Since the time the student loans were incurred, Plaintiff has never been able to pay the total requested monthly amount of the student loans, which was approximately $1,500.00. At all times relevant, Plaintiff exercised different manners of payment, including forbearance, economic hardship deferment, partial payment forbearance, as much as Plaintiff could afford to pay, which at most was approximately $500.00 per month, as Plaintiff recalls at this time.

(ECMC's Exhibits 2 and 3, Debtor's Response to Interrogatory 24). From 1995 until 2001, the Debtor made irregular, partial payments on the loans, and apparently received forebearances or deferments for the total payments due. (Transcript, pp. 38–42).

The Debtor further acknowledges that she has made no payments on the student loans since August of 2001, other than two $30.00 payments in 2003 that she made toward the law school loan. (Transcript, p. 41).

The Debtor concedes, however, that she has no documents to evidence the payments made in 2003. (Transcript, p. 125). In fact, the Debtor did not produce any documentation to show that she ever made any payments on the student loans since the debts were incurred. The Debtor did not submit any cancelled checks, receipts, or account statements, for example, to evidence any history of payment on the loans.

■ Finally, the Debtor testified that she has not reapplied for admission to the Bar of either Florida or Texas, and that she will not do so (Transcript, p. 72), that

she has never applied for any social security disability benefits (Transcript, p. 81), and that she never applied to participate in the William D. Ford Direct Loan Program (Transcript, p. 87). A debtor's failure to pursue alternative repayment plans such as the Ford program "is not a *per se* indicator of bad faith." The failure may be considered as evidence of the debtor's intent, however, in conjunction with all of the other evidence in the case. *In re Burton*, 339 B.R. at 888.

Throughout her testimony, the Debtor did not describe any efforts to obtain income-producing employment, on either a full-time or a part-time basis, since she closed her law office in 2004. (See Transcript, pp. 125–26).

The Debtor did not show that she has made meaningful attempts to repay the loans, that she has pursued alternative methods to discharge the debt, or that she is attempting to use her education and skills to locate employment that will accommodate her condition. Under these circumstances, the Court finds that the Debtor did not make good faith efforts to repay her student loan obligations, and that she therefore failed to satisfy her burden of proof under the third prong of the *Brunner* test. See *In re Brosnan*, 323 B.R. at 538–39; *In re Folsom*, 315 B.R. at 165–66.

The Debtor asserts that her student loans should be discharged in her Chapter 7 case, because excepting the debts from discharge would impose an undue hardship on her and her dependents within the meaning of § 523(a)(8) of the Bankruptcy Code.

The Debtor has not satisfied her burden of proof in this proceeding. Specifically, the Debtor has not shown (1) that she cannot maintain, based on her current income and expenses, a minimal standard of

living if forced to repay the loans, (2) that additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period, and (3) that she has made good faith efforts to repay the loans.

Consequently, the Debtor has not shown that excepting the debts from discharge will impose an undue hardship on her and her dependents. The student loans owed by the Debtor to the Defendants are not dischargeable in the Debtor's Chapter 7 case.

Accordingly:

**IT IS ORDERED** that:

1. Final Judgment shall be entered in favor of the Defendants, Florida Department of Education, Educational Credit Management Corporation, and Help Service Group, Inc., successor in interest by assignment to Hemar Insurance Corporation of America, and against the Debtor, Anna S. Lykoudis, in this adversary proceeding.

2. The student loan obligations owed by the Debtor to the Defendants are excepted from discharge, and are not dischargeable in the Debtor's Chapter 7 case pursuant to § 523(a)(8) of the Bankruptcy Code.

3. A separate Final Judgment shall be entered consistent with this Opinion.