Natalie M. WILLIAMS, Debtor.

Natalie M. Williams, Appellant,

v.

New York State Higher Education Services Corporation, Educational Credit Management Corp., University of Medicine and Dentistry of New Jersey, Appellees.

No. 02 Civ. 8497(SAS).

United States District Court, S.D. New York.

June 2, 2003.

---

Natalie M. Williams, New York City, pro se.

Cheryl B. Fisher, New York State Higher Education Services Corporation, Office of Counsel—EFMC, Albany, NY, for New York State Higher Education Services Corporation.

Sheila A. Denton, Pullman & Comley, L.L.C., Bridgeport, CT, for Education Credit Management Corporation.

Larry I. Glick, Reisman, Peirez, Reisman & Calica, L.L.P., Garden City, NY, for University of Medicine and Dentistry of New Jersey.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Natalie Williams (the "Debtor") filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 8, 2001. Subsequently, Williams filed this adversary proceeding against various state and federal agencies seeking a determination that her student loans are dischargeable pursuant to 11 U.S.C. § 523, or are otherwise eligible for loan forgiveness. On August 13, 2002, the Bankruptcy Court issued an order denying Williams' request and she now appeals that order. For the reasons stated below, the Bankruptcy Court's order is affirmed.

## I.  BACKGROUND

### A.  The Parties

Williams is a licensed teacher currently employed by the New York City Board of Education. *See* 3/25/02 Joint Pre–Trial Order ("JPTO"), Ex. E to Appellees' Appendix to Record on Appeal, at 4. From 1981 to 1994, she received student loans from three lenders. The first lender, the New York State Higher Education Services Corporation ("NY Education Services"), is a New York State agency responsible for the administration of the Federal Family Education Loan Program ("FFEL Program") as a guaranty agency. *See Natalie Williams v. New York State Higher Educ. Corp. (In re Natalie Williams)*, No. 01 B 40029, at 4 (Bankr. S.D.N.Y. Aug. 13, 2002). Williams also received loans from the Educational Credit Management Corporation ("Credit Management"), which is a not-for-profit corporation created under the direction of the Department of Justice. Credit Management provides specialized guarantor services to the Department of Education, including the transfer of title to certain student loan accounts on which the stu-

dent loan borrower has filed a bankruptcy petition.[1] *See id.* The third lender, the University of Medicine and Dentistry of New Jersey ("UMDNJ"), is a medical school Williams attended from 1992 to 1994. *See id.*

## B. Stafford and UMDNJ Loans

The lenders provided Williams with two types of loans: Stafford Loans[2] and UMDNJ Loans. Williams received Stafford Loans from N.Y. Education Services. These loans were taken from 1981 to 1991 when Williams was a student at the University of Chicago and Columbia University Teachers College. *See id.* The loans totaled $40,320, and Williams has paid a total of $11,287.44 through wage garnishment and tax seizure. *See id.* Williams also received Stafford Loans from Credit Management in 1993 and 1994, when she attended UMDNJ. *See id.* As of March 25, 2002, Williams outstanding balance with Credit Management was $13,280.75.

Williams' UMDNJ student loans consist of Health Professional Student Loans and Loans for Disadvantaged Students, which Williams received when she attended UMDNJ. As of January 8, 2001, the amount of unpaid principal and interest owed by Williams under the UMDNJ Loans was $17,277.03. *See id.* UMDNJ has also charged Williams for late fees of $127.36 and attorneys' fees of $5,016.04.

## C. Bankruptcy Court Proceedings

On January 8, 2001, Williams, appearing pro se, filed a petition for relief under Chapter 13 of the Bankruptcy Code. Williams subsequently filed three adversary proceedings against N.Y. Education Services, Credit Management, and UMDNJ. In each adversary proceeding, the Debtor disputed the accuracy of the amounts claimed by each of the defendants and requested a discharge of her student loans due to financial hardship. Williams also claimed that her student loans were eligible for deferment and forgiveness. The Bankruptcy Court consolidated the three adversary proceedings on August 17, 2001, pursuant to Federal Rule of Bankruptcy Procedure 7024.

On March 25, 2002, the Bankruptcy Court held a trial and ruled that Williams was not entitled to discharge her student loans on the ground that the loans created a financial hardship. The court also issued an opinion on August 13, 2002, holding that Williams' Stafford Loans were ineligible for loan forgiveness or deferment based on her employment as a teacher in a low-income area, pursuant to 20 U.S.C. § 1078–10 and FFEL Program. *See id.* at 5. In addition, the court held that the UMDNJ Loans were ineligible for deferment or cancellation based on the terms of the promissory notes. *See id.* The court did not make a determination on the accuracy of the amounts claimed by each defendant. Williams filed this appeal on October 24, 2002, arguing that the

---

1. Credit Management is the current holder of two of Williams' loans. The loans were originally provided by United Student Aid Funds, Inc. ("United"), but Credit Management was substituted as a party defendant in this adversary proceeding by order dated July 9, 2001. Credit Management was the guarantor of United's loans to Williams, and held all rights in the repayment of the loan at the time Williams filed the adversary proceedings. *See id.* at 3.

2. Stafford Loans are student loans administered by the FFEL Program. The funds for these loans are provided by private lenders and the federal government guarantees these loans against default. The loans are also known as Guaranteed Student Loans. *See id.* at 3 n. 1

Bankruptcy Court erred, and that her loans should be discharged, forgiven, or deferred.

## II. STANDARD OF REVIEW

A district court sits as an appellate court in bankruptcy cases and applies dual standards of review. Questions of law are subject to de novo review. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992); *Seaman Furniture Co., Inc. v. Seaman–Mitchel Assoc. (In re Seaman Furniture Co. of Union Square),* No. 96 Civ. 4268, 1996 WL 741604, at *1 (S.D.N.Y. Dec.27, 1996). The Bankruptcy Court's findings of fact will only be set aside if they are clearly erroneous. *See* Fed. R. Bankr.P. 8013; *In re Artha Mgmt., Inc.,* 91 F.3d 326, 328 (2d Cir.1996).

## III. STAFFORD LOANS

### A. Loan Discharge

#### 1. 11 U.S.C. § 523(a)(8)

Generally, a debtor who seeks relief under the Bankruptcy Code cannot have student loan debt discharged. However, pursuant to 11 U.S.C. § 523(a)(8), a student loan can be discharged if repayment of the debt "will impose an undue hardship on the debtor and the debtor's dependents." "Through the enactment of section 523(a)(8) Congress sought to reduce bankruptcy defaults, and thereby advance the original purposes of student loan programs, *i.e.* to assure that students attending college would have reasonable access to low interest rate loans." *See Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore),* 230 B.R. 22, 25 (Bankr. D.Conn.1999) (citing S.Rep. No. 89–673 (1965), U.S.Code Cong. & Admin.News 1965, 4027). "[T]he clear congressional intent exhibited in section 523(a)(8) [is] to make the discharge of student loans more difficult than that of other nonexcepted

debt." *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987).

A debtor carries a heavy burden when she seeks to establish an undue hardship under section 523(a)(8). Discharge is permissible only if a court finds: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *See Brunner,* 831 F.2d at 396. "If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 306 (3d Cir.1995). Because any debtor in bankruptcy usually has significant financial problems, a finding of undue hardship will not be based simply on the debtor's difficulty in making payments. *See id.* ("The first prong of the *Brunner* analysis requires more than a showing of tight finances."). Instead, the undue hardship must be truly severe. *See Craig v. Pennsylvania Higher Educ. Assistance Agency (In re Craig),* 64 B.R. 854, 857 (Bankr. W.D.Pa.1986) ("To prove 'undue hardship,' one must be suffering from truly severe, and even uniquely difficult circumstances.").

Courts consider multiple factors when determining whether the three-pronged *Brunner* test is satisfied, including the debtor's gross income, age, health, dependents, and marital status. For example, a debtor with a gross income above the poverty rate, who is healthy and single, will not suffer undue hardship from loan

repayment. *See In re Elmore,* 230 B.R. at 28 (holding that debtor with three children did not have undue hardship because the family income of over $45,000 was well above the federal poverty level guidelines); *In re Faish,* 72 F.3d at 306 (holding that debtor with one dependent and a gross income of $27,000 did not suffer undue hardship for making student loan payments). Even a debtor who is unemployed cannot establish undue hardship where the debtor has the potential to find employment. *See Brunner* 831 F.2d at 396–97; *see also In re Faish,* 72 F.3d at 306–07 (discussing facts in *Brunner*). Discharge based on undue hardship is reserved for extreme circumstances where a debtor is living in poverty or near poverty with little possibility of supplemental income.

### 2. Williams Is Ineligible for Loan Discharge

■ The Bankruptcy Court correctly held that Williams will not suffer undue hardship from the repayment of her student loans. Williams does not satisfy the first prong of the *Brunner* test because the undisputed facts establish that Williams' income and expenses will allow her to make loan repayments while maintaining a minimal standard of living. Although Williams may have financial difficulty repaying her student loans, her situation is far from severe. Williams is a teacher employed by the New York City Board of Education. Her salary is $52,409.00 per year. *See* JPTO at 5. At the time of the petition, Williams was approximately thirty-nine years old, single with no dependents. Williams was in good health and resided in an apartment. *See id.* at 6. Williams' salary as a teacher had increased since the start of her employment in 1994 and it is reasonable to assume that it will continue to increase. *See id.* at 5. She was not living under impoverished conditions nor is there a threat that she will be exposed to such conditions. As a result, Williams failed to establish that repayment of the loans will cause an undue hardship.

Williams challenges the Bankruptcy Court's undue hardship analysis on the grounds that the court did not determine the true amount Williams owes to the lenders. According to Williams, the lenders' calculation of her student loan debt is more than her actual debt because some of her payments have not been credited and default fees, collection fees, and interest have been improperly added. Williams' argument does not affect the Bankruptcy Court's holding because a bankruptcy court is not required to determine the full amount due to the creditors during adversary proceedings concerning the dischargeability of student loans. Instead, the amount owed by the debtor is determined as part of the bankruptcy proceedings. Moreover, if the student loan debt calculations relied on by the Bankruptcy Court are over estimated, Williams certainly will not suffer undue hardship based on a lower estimate. Nevertheless, the Bankruptcy Court will determine the final amount owed during the pending Chapter 13 proceedings and it was not necessary for it to be determined during these adversary proceedings.

### B. Loan Forgiveness

Pursuant to the Federal Stafford Loan Forgiveness for Teachers Program (the "Stafford Program"), 20 U.S.C. § 1078–10, loan forgiveness is available for teachers who have "been employed as a full-time teacher for 5 consecutive complete school years" under certain conditions. The Stafford Program applies "for any new borrower on or after October 1, 1998." Prior to the enactment of the Stafford Program in 1998, teachers could have their Stafford Loans forgiven under the Federal Stafford

Loan Forgiveness Demonstration Program (the "Demonstration Program"). The Demonstration Program applied to "any new borrower after October 1, 1989." 20 U.S.C. § 1078–10 (see amendments and prior language of statute).

The Bankruptcy Court properly concluded, based on undisputed facts, that Williams' Stafford Loans cannot be forgiven pursuant to the Stafford Program or the Demonstration Program. Collectively, the forgiveness programs apply to borrowers who were without any outstanding Stafford Loans prior to 1989. Williams has an outstanding Stafford loan from 1981. Therefore, Williams is not a new borrower under the Stafford Program or Demonstration Program and is ineligible for loan forgiveness.

### C. Loan Deferment

The FFEL Program authorizes the deferment of Stafford Loans when the borrower has "[u]p to three years of service as a full-time teacher in a public or non-profit private elementary or secondary school in a teacher shortage area." 34 C.F.R. § 682.210(b)(5)(ii). This provision only applies to a borrower who does not have any outstanding balance on a Stafford loan "made prior to July 1, 1987 for a period of enrollment beginning prior to July 1, 1987." 34 C.F.R. § 682.210(b)(7)(i).

Williams argues that her student loans were subject to deferment under the FFEL Program and were improperly placed in default. However, it is undisputed that Williams has an outstanding debt from the Stafford Loans she received in 1981 and therefore she is ineligible for deferment under the FFEL Program. Williams believes that the Stafford Loans taken out in 1981 are covered under 34 C.F.R. § 682.210(b)(2), which allows deferment of loans made before August 15, 1983. However, Williams misreads the statute and it does not apply to teachers.[3] Accordingly, Williams' loans were never subject to deferment under the FFEL Program.

### IV. UMDNJ LOANS

Unlike the Stafford Loans, the dischargeability of the UMDNJ is governed by the terms of Williams' promissory notes. The notes provide that subject to the availability of funds the Secretary may repay all or any part of Williams' loan if the Secretary determines that Williams "is in exceptionally needy circumstances." Promissory Note, Ex. F to Appellees' Appendix to Record on Appeal, ¶ 13(a). Williams contends that this provision enables discharge of her loans on an undue hardship basis.

The Bankruptcy Court correctly held that the UMDNJ Loans cannot be discharged under the terms of the promissory

---

**3.** 34 C.F.R. § 682.210(b)(2) provides:
For a borrower of a Stafford or SLS loan, and for a parent borrower of a PLUS loan made before August 15, 1983, deferment is authorized during any period when the borrower is—
(i) On active duty status in the United States Armed Forces, or an officer in the Commissioned Corps of the United States Public Health Service, for up to three years (including any period during which the borrower received a deferment authorized under paragraph (b)(5)(i) of this section);

(ii) A full-time volunteer under the Peace Corps Act, for up to three years;
(iii) A full-time volunteer under Title I of the Domestic Volunteer Service Act of 1973 (ACTION programs), for up to three years;
(iv) A full-time volunteer for a tax-exempt organization, for up to three years; or
(v) Engaged in an internship of [sic] residency program, for up to two years (including any period during which the borrower received a deferment authorized under paragraph (b)(5)(iii) of this section).

notes. *First,* the notes provide that the determination of Williams' eligibility for discharge is completely within the discretion of the Secretary and the Secretary has decided not to grant Williams any relief. *Second,* Williams does not have exceptionally needy circumstances for the same reasons that her undue hardship argument failed with respect to the Stafford Loans. Consequently, Williams is ineligible for discharge of the UMDNJ Loans.

## V. CONCLUSION

For the foregoing reasons Williams' student loans cannot be discharged, forgiven, or deferred. The order of the Bankruptcy Court is hereby affirmed.

SO ORDERED.