**In re Keldric Dante MOSLEY, Debtor.**

**Keldric Dante Mosley, Plaintiff,**

v.

**General Revenue Corp., U.S. Department of Education, Alcorn State University, Educational Credit Management Corporation, Defendants.**

**Bankruptcy No. 99–78810–CRM.
Adversary No. 04–9139.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 25, 2005.

Keldric Dante Mosley, East Point, GA, pro se.

Thomas W. Joyce, Jones, Cork & Miller, LLP, Macon, GA, for Educational Credit Management Corp.

## SUPPLEMENTAL ORDER

C. RAY MULLINS, Bankruptcy Judge.

**THIS MATTER** is before the Court on the Complaint to Determine Dischargeability of Student Loan (the "Complaint"), filed on August 12, 2004. On July 20, 2005, a trial was held and the Court ruled that the Debtor's student loan obligations to Defendant Educational Credit Management Corporation ("ECMC") would be discharged pursuant to section 523(a)(8) of the Bankruptcy Code. On July 21, 2005, the Court entered a short order declaring that, for the reasons stated on the record, the Debtor is granted an undue hardship discharge and the debts owed to ECMC are dischargeable. The Court reserved the right to enter supplemental findings regarding this matter. Accordingly, this Order supplements the record.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), as well as Rule 1070–1 of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The issue before the Court is whether the Debtor, who is and has been homeless for several years and suffers from various physical and psychological ailments, is entitled to receive a discharge of his student loans. The Court holds that the Debtor has established, by a preponderance of the evidence, his entitlement to relief under section 523(a)(8) and the Brunner test. The Debtor has demonstrated that he cannot currently maintain a minimal standard of living even without the repayment of his student loans, he suffers from serious and ongoing physical and psychological disabilities which make it unlikely that he will have the ability to repay student loans in the future, and he has lacked funds to make any payments in the past.

## I. FACTUAL BACKGROUND

The Debtor, proceeding *pro se,* filed a petition for relief under chapter 7 of the Bankruptcy Code on December 21, 1999. On May 15, 2000, the Court entered the Order Discharging Debtor(s), Approving Account, Discharging Trustee, and Closing Estate (Doc. No. 20), and the case was closed shortly thereafter. On May 5, 2004, the Debtor filed the "Complaint to Reopen Bankruptcy Case and to Cease All Collection Activities, Including Garnishment of Federal Income Taxes" (Doc. No. 22), which the Court construed as the "Motion to Reopen." On August 12, 2004, a hearing was held on the Motion to Reopen, and the Court granted the relief requested, reopening the case to allow the Debtor to file an adversary proceeding. The above-styled adversary proceeding was commenced on August 12, 2004.

The Debtor seeks a discharge of several student loans he incurred while attending Alcorn State University ("ASU"). According to the National Student Loan Data System, it appears that the Debtor had obtained several loans, including six Stafford Loans, through the Federal Family Education Loan Program in the approximate amount of $45,000.00.[1] The loans

---

1. The Debtor also obtained a Federal Perkins Loan in the approximate amount of $1,585.00

were previously held by U.S.A. Funds and then were eventually transferred to ECMC. The Debtor, the first member of his family to go to college, attended ASU from the fall of 1989 until the spring of 1994. A history major, the Debtor testified that he was not awarded a bachelor's degree, as he needed to complete an additional five or six courses to graduate.

During his first semester at ASU, the Debtor joined the U.S. Army Reserve Officers' Training Corps ("ROTC"). In the summer of 1993, the Debtor was training for service in the Persian Gulf when he was involved in a debilitating accident. The Debtor testified that he fell off a tank, severely injuring his hip and his back.[2] Although the Debtor had completed his ROTC program, he resigned his commission because he felt that he was not healthy enough to attend officer school. Subsequently, the debtor was honorably discharged from the Army and left ASU to return to Atlanta.

The Debtor lived with his mother until 1999. He testified that during this time, his physical and mental condition "deteriorated," as he was depressed and drank heavily. The Debtor tried to return to college to obtain his degree but he could not receive the needed financial aid because his prior loans were in default. He then enrolled in a course at a heavy equipment school, but had difficulty learning the trade. Despite his efforts, the Debtor could not maintain employment. He held several different jobs. In particular, he was employed in unskilled labor positions for the United States Postal Service, the Bureau of Solid Waste of the City of Atlanta Department of Public Works, Hartsfield–Jackson Atlanta International Airport, and a moving company, and stated that the manual labor aggravated his back and hip injuries. The Debtor did receive worker's compensation for additional bodily trauma he suffered while working for the moving company.

The Debtor testified that his family did not understand his predicament, especially his emotional state and persistent unemployment. In January of 2000, the Debtor's mother evicted him from her home and had him involuntarily committed to Georgia Regional Hospital, a state supported facility that provides mental health services for those suffering from psychological disabilities. According to the Debtor's testimony, he was diagnosed with depression and an anxiety disorder. Though he had been in denial of these mental illnesses, after his release from the hospital he sought treatment through the Department of Veterans' Affairs (the "V.A."). He also sought medical care for his chronic back problems.

The Debtor continues to receive treatment from the V.A.'s mental health facility. He testified that since 2001, he has been taking prescription medication for his depression. The Debtor has also been prescribed four different drugs for his back pain and high blood pressure. Further, the Debtor receives physical therapy for his back. The Debtor stated that he often experiences acute discomfort due to his back injury, and he is still affected by his psychological disorders. According to several exhibits admitted into evidence during the trial, the Debtor suffers from chronic lower back pain with radicular component, depression, anxiety, hypertension, and high blood pressure and adjustment disorder with anxiety and dysthmia. *See* Plaintiff's Exhibits 1E and 1F.

from ASU and/or the General Revenue Corporation.

2. It appears that the Debtor suffered a lumbosacral sprain.

The Debtor asserts that these ailments have adversely impacted his employment. He has not been steadily employed since July of 2003. Although the Debtor has not provided specific detail regarding his income, the Court will note that it is very minimal since the Debtor cannot afford life's basic necessities.[3] According to the Debtor's Social Security Earnings Statement, the Debtor has not earned more than $7,770.00 since 1994. *See* Plaintiff's Exhibit 2A. The following chart sets forth his past earnings:

| Year | Taxed Social Security Earnings | Taxed Medicare Earnings |
|------|-------------------------------|------------------------|
| 1994 | $3,682.00 | $3,682.00 |
| 1995 | $6,929.00 | $6,929.00 |
| 1996 | $7,770.00 | $7,770.00 |
| 1997 | $? 12.00 (illegible) | $1,287.00 |
| 1998 | $1,816.00 | $1,816.00 |
| 1999 | $3,641.00 | $3,641.00 |
| 2000 | $4,333.00 | $4,333.00 |
| 2001 | $4,472.00 | $4,472.00 |
| 2002 | $2,596.00 | $2,596.00 |
| 2003 | $3,599.00* (estimated) | |
| 2004 | unreported as of date of statement | |

The Debtor testified that his monthly income is $210.00 from disability compensation provided by the V.A.[4] He also receives food stamps from the Georgia Department of Human Resources. Currently, he is registered with the Georgia Department of Labor in an effort to find employment. He has been homeless since he was evicted from his mother's home. The Debtor explains that he stays with different friends or family members every night. During the day, he travels to labor pools in search of work or spends time in parks or libraries. He owns virtually no property. The Debtor cannot even afford a car of any type. The Debtor, now thirty-four years old, has testified that he is doing the best he can to support himself. He admits that he has not made payments on his student loan obligations, which have been in default since July of 1996.[5]

## II. ARGUMENTS

In the Complaint, the Debtor argues that, given his current income he cannot maintain a minimal standard of living and repay his student loans. He also claims that he made a good faith effort to repay his debts.

ECMC asserts that this has been a difficult case due to lack of discovery regarding the Debtor's medical conditions and employment history.[6] ECMC contends

---

**3.** The Debtor did not file amendments to the Schedules or Statement of Financial Affairs, which were originally filed in 1999.

**4.** The Debtor has filed an appeal with the V.A. to increase the amount of his disability compensation.

**5.** It appears that the Debtor may have defaulted on his Perkins loan in February of 1995.

**6.** On December 3, 2004, ECMC filed the Motion for Order Compelling Discovery (the "Motion to Compel") (Doc. No. 23), claiming that the Debtor did not provide complete responses to the Interrogatories. Apparently ECMC wrote several letters to the Debtor regarding this matter, and the Debtor failed to respond or address these discovery issues. ECMC requested that the Court (i) dismiss the Complaint, (ii) award attorney's fees for the Debtor's failure to contact ECMC, and (iii) issue an order compelling the Debtor to respond to the discovery. On February 8, 2005, the Court entered the Order (Doc. No. 25) granting the Motion to Compel and instructing the Debtor to supplement his responses to the Interrogatories and provide the requested documentation. On March 18, 2005, ECMC filed the Motion for Sanctions for Plaintiff's Failure to Comply with Order Compelling Discovery (the "Motion for Sanctions") (Doc. No. 34). ECMC maintains that the Debtor has failed to comply with the Order granting the Motion to Compel by failing to supplement his responses to the Interrogatories or provide the requested documentation. ECMC requested that the Court dismiss the Complaint pursuant to Rule 37(b)(2)(C) of the Fed-

that the Debtor has not shown that he has a disability and cannot work due to a disability. ECMC further alleges that the Debtor failed the Brunner test due to a lack of evidence, particularly in regards to his medical diagnosis and prognosis.

## III. STANDARD

■ Courts generally afford *pro se* litigants special consideration. In *Haines v. Kerner,* the Supreme Court held that the pleadings of *pro se* litigants are subject to "less stringent standards than formal pleadings drafted by lawyers." 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dioguardi v. Durning,* 139 F.2d 774 (2d Cir.1944)) *(per curiam* ). Following the Supreme Court's ruling, the majority of courts liberally construe *pro se* pleadings, particularly complaints. *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) ("It is settled law that the allegations of such a complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers ....' ") (quoting *Haines,* 404 U.S. at 520, 92 S.Ct. 594); *Didie v. Howes,* 988 F.2d 1097, 1105 (11th Cir.1993) ("Further, we are mindful of the leniency accorded to review of the filings of *pro se* parties.") (citing *Haines,* 404 U.S. at 520–21, 92 S.Ct. 594).

## IV. ANALYSIS

■ Section 523(a)(8) of the Bankruptcy Code restricts the dischargeability of government-guaranteed student loans. Specifically, the statute provides that a discharge pursuant to section 727 does not discharge a debt

> for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents....

11 U.S.C. § 523(a)(8) (emphasis added). The phrase "undue hardship" is not defined in the Bankruptcy Code nor in the legislative history of section 523(a)(8). However, the Eleventh Circuit has adopted the test articulated in *Brunner v. New York Higher Educational Services Corp.,* 831 F.2d 395, 396 (2d Cir.1987), establishing the factors used to determine if the debt imposes an "undue hardship." *Hemar Ins. Corp. of Am. v. Cox (In re Cox),* 338 F.3d 1238, 1241 (11th Cir.2003), *reh'g, en banc, denied,* 82 Fed.Appx. 220, 2003 WL 22240497 (11th Cir.2003), *cert. denied,* 541 U.S. 991, 124 S.Ct. 2016, 158 L.Ed.2d 496 (2004). In fact, the Brunner test has been adopted by the majority of circuits.[7] *Educ. Credit Mgmt. Corp. v. Polleys,* 356 F.3d 1302 (10th Cir.2004); *United States Dep't of Educ. v. Gerhardt (In re Gerhardt),* 348 F.3d 89 (5th Cir. 2003); *Ekenasi v. The Educ. Res. Inst. (In re Ekenasi),* 325 F.3d 541 (4th Cir.2003); *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman),* 325 F.3d 1168 (9th Cir.2003); *Goulet v. Educ. Credit Mgmt. Corp.,* 284 F.3d 773 (7th Cir.2002); *Rifino v. United*

---

eral Rules of Civil Procedure and award attorney's fees in an amount no less than $350.00.

**7.** Other courts have applied the totality of circumstances test. *See, e.g., Long v. Educ. Credit Mgmt. Corp. (In re Long),* 322 F.3d 549, 553 (8th Cir.2003) (rejecting Brunner test and embracing test enumerated in *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702 (8th Cir.1981)).

*States (In re Rifino)*, 245 F.3d 1083 (9th Cir.2001); *Brightful v. Pa. Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324 (3rd Cir.2001); *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir.1998); *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298 (3d Cir.1995), *cert. denied*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996); *In re Roberson*, 999 F.2d 1132 (7th Cir.1993).[8] To satisfy the three-pronged Brunner test, the debtor must demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396). The debtor has the burden of proving the existence of undue hardship by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Rifino*, 245 F.3d at 1087–88; *Brightful*, 267 F.3d at 327; *Johnson v. Educ. Credit Mgmt. Corp. (In re Johnson)*, 299 B.R. 676, 680 (Bankr.M.D.Ga.2003) (Walker, J.). Generally, courts have held that the debtor must prove all three elements before a discharge can be granted; failure to prove any one element is fatal to the claim. *Faish*, 72 F.3d at 306; *Rifino*, 245 F.3d at 1088–89; *Brightful*, 267 F.3d at 328; *Sax-

*man*, 325 F.3d at 1173; *Educ. Credit Mgmt. Corp. v. Pope (In re Pope)*, 308 B.R. 55, 59 (N.D.Cal.2004); *Norasteh v. Boston Univ. (In re Norasteh)*, 311 B.R. 671, 676 (Bankr.S.D.N.Y.2004); *Williams v. N.Y. State Higher Educ. Serv. Corp. (In re Williams)*, 296 B.R. 298, 302 (S.D.N.Y. 2003); *Thoms v. Educ. Credit Mgmt. Corp. (In re Thoms)*, 257 B.R. 144, 148 (Bankr. S.D.N.Y.2001); *Lehman v. N.Y. Higher Educ. Servs. Corp. (In re Lehman)*, 226 B.R. 805, 808 (Bankr.D.Vt.1998). "Undue hardship" contemplates unique, extraordinary, or severe circumstances, particularly under the second prong of the Brunner test, and thus courts must determine undue hardship on a case-by-case basis. *Faish*, 72 F.3d at 302. *See also In re Ammirati*, 187 B.R. 902, 907 (D.S.C.1995), *aff'd*, 85 F.3d 615 (4th Cir.1996); *Ulm v. Educ. Credit Mgmt. Corp.*, 304 B.R. 915, 919 (S.D.Ga.2004) (Nangle, J.); *Educ. Credit Mgmt. Corp. v. Boykin (In re Boykin)*, 313 B.R. 516, 522 (M.D.Ga.2004) (Fitzpatrick, J). Therefore, whether "undue hardship" exists is a mixed question of law and fact, and the Court's inquiry will be particularly fact-intensive. *Educ. Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 816 (N.D.Fla. 2003).

 Under the first prong of the Brunner test, the debtor must demonstrate that, if "required to make the monthly student loan payment, his standard of living will fall below the minimum level." *In re Brunner*, 46 B.R. 752, 754 (S.D.N.Y.1985) (district court opinion establishing the Brunner test) (hereinafter *"Brunner II"*). Thus the debtor should show that, given current income and living expenses, repaying student loans prevents

---

**8.** The Sixth Circuit has applied, but not exclusively adopted, the Brunner test, *Miller v. Pa. Higher Educ. Assistance Agency*, 377 F.3d 616 (6th Cir.2004); *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir.1998).

him from maintaining a minimal standard of living for himself and his dependents. *Ulm*, 304 B.R. at 919 (citing *Cox*, 338 F.3d at 1241). In defining "minimal standard of living," courts often look at the poverty guidelines issued each year in the *Federal Register* by the United States Department of Health and Human Services.[9] Although the Brunner test does not require that the debtor's income to be at or below the poverty line, a debtor whose income falls below the established poverty level presumptively meets the first prong. *Faish*, 72 F.3d at 306 ("The Brunner standard meets the practical needs of the debtor by not requiring that he or she live in abject poverty ... before a student loan may be discharged."); *Ammirati*, 187 B.R. at 907; *Ekenasi*, 271 B.R. at 262. *See also Williams*, 296 B.R. at 303; *Vazquez v. United Student Aid Funds (In re Vazquez)*, 194 B.R. 677, 680 (Bankr. S.D.Fla.1996). The Court holds that although a debtor is not expected to live in poverty to discharge student loans, where the debtor's income is at, near, or below the federal poverty guidelines, the "minimal standard of living" threshold, and thus the first prong of the Brunner test, is satisfied.[10] In the instant case, the Debtor is living in abject poverty, and has been for several years. The federal poverty guideline for a single person with no dependents in the year 2004 was $ 9,310.00. *Federal Register: Notices,* Volume 69, Number 30, Pages 7335–38 (February 13, 2004). Although the Debtor has failed to provide detailed information regarding his income

for 2004, the Debtor's annual income for the past ten years has not exceeded $7,770.00, and averages approximately $4,012.50. This year, the Debtor's income is approximately $2,520.00.[11] *Federal Register: Notices,* Volume 70, Number 33, Pages 8373–75 (February 18, 2005). Clearly his income is below the poverty line. Even without the repayment of student loans, the Debtor cannot afford the basic necessities of life, including food, clothing, and shelter. He is destitute. The Debtor has no ability to repay his student loans and maintain a minimal standard of living, and therefore he has met the first prong of the Brunner test.

As previously noted, most courts hold that the debtor must satisfy all three prongs of the Brunner test to demonstrate undue hardship. *See, e.g., Faish,* 72 F.3d at 306; *Rifino,* 245 F.3d at 1088–89; *Brightful,* 267 F.3d at 328; *Saxman,* 325 F.3d at 1173. In fact, the Brunner test is often strictly interpreted, thereby denying deserving debtors, who are honest and unfortunate, much-needed relief and frustrating the fresh start policy of the Bankruptcy Code. *Polleys,* 356 F.3d at 1308; *Durrani v. Educ. Credit Mgmt. Corp. (In re Durrani),* 311 B.R. 496, 501–02 (Bankr. N.D.Ill.2004), *aff'd, Educ. Credit Mgmt. Corp. v. Durrani,* 320 B.R. 357 (N.D.Ill. 2005). "Many ... courts employing the Brunner analysis, however, appear to have constrained the three Brunner requirements to deny discharge under even the most dire circumstances." *Polleys,* 356

---

**9.** These guidelines are used for administrative purposes such as determining financial eligibility for federal assistance programs. *See http://aspe.hhs.gov/poverty/05poverty.shtml.* Courts generally take judicial notice of these guidelines. *See* Rule 201(b) of the Federal Rules of Evidence.

**10.** The Court does *not* adopt the Department of Health and Human Services' poverty guidelines as the minimal standard of living.

*See Rutherford v. William D. Ford Direct Loan Program (In re Rutherford),* 317 B.R. 865 (Bankr.N.D.Ala.2004); *Ivory v. United States (In re Ivory),* 269 B.R. 890 (Bankr.N.D.Ala. 2001).

**11.** The federal poverty guideline for a single person with no dependents is $ 9,570.00 this year.

F.3d at 1308. An unduly rigid application of the Brunner test, especially the second and third prongs, may prejudice debtors who are destitute.[12] Where the debtor lives in abject poverty and cannot maintain even a minimal standard of living even without repaying his student loans, flexibility with regard to the last prongs of Brunner may be equitable. *But cf. Boykin,* 313 B.R. at 520–21. Nonetheless, the Court will continue its analysis and consider the two remaining prongs of the Brunner test.

■■■■■ The second prong, often referred to as "the additional circumstances test," requires that the debtor present additional circumstances that will prevent him from maintaining a minimal standard of living for a significant portion of the repayment period if obligated to repay student loans. *Cox,* 338 F.3d at 1241. In determining whether the debtor satisfies this prong, the Court must consider two issues: (i) if the debtor has a problem or condition which impairs his ability to work; and (ii) if the problem or condition would persist for a significant portion of the student loan repayment period. *Brown v. Educ. Credit Mgmt. Corp. (In re Brown),* 247 B.R. 228, 234 (Bankr.N.D.Ohio 2000). *See also Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch),* 409 F.3d 677, 681 (6th Cir.2005); *Brightful,* 267 F.3d at 330; *Goulet,* 284 F.3d at 778. Therefore, the problem or condition must interfere with the debtor's ability to obtain and sustain income sufficient to repay a student loan. Generally, courts focus on whether the debtor will be completely unable to pay his student loan debt in the future for reasons beyond his control. "[T]he dischargeability of student loans should be based upon the certainty of hopelessness,

not simply a present inability to fulfill financial commitment." *Roberson,* 999 F.2d at 1136 (quoting *In re Briscoe,* 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)). Thus the additional circumstances must be significant and ongoing, preventing the debtor from securing and maintaining permanent full-time employment.

■■■■■ It is well-established that physical or psychological disabilities often form the basis of an undue hardship analysis. Such medical conditions are considered under the second prong. Accordingly, the Court must determine whether the debtor's medical condition actually impairs his ability to work, and whether the condition will persist for a significant portion of the repayment period. Substantial credible evidence must be presented to support the existence of such a medical condition. In addition to the debtor's testimony, many courts require the debtor to present corroborating evidence. The *Swinney v. Academic Financial Services (In re Swinney)* case is often relied upon for the proposition that "such evidence does not have to necessarily consist of extensive expert testimony, . . . [but] should consist of more than simply bare allegations; that is, whenever a debtor's health, whether mental or physical, is directly put at issue some corroborating evidence must be given supporting the proponent's position." 266 B.R. 800, 805 (Bankr.N.D.Ohio 2001) (citing Fed.R.Evid. 701). *See Norasteh,* 311 B.R. at 678; *Lowe v. ECMC (In re Lowe),* 321 B.R. 852, 860 (Bankr.N.D.Ohio 2004); *Matthews v. Sallie Mae Servicing (In re Matthews),* 324 B.R. 319, 322 (Bankr.N.D.Ohio 2004); *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner),* 309 B.R. 405, 419 (Bankr.E.D.N.Y.2004); *Folsom v. United States Dep't. of Educ. (In re*

---

**12.** These debtors cannot afford representation, and thus cannot overcome evidentiary burden of the second prong. Moreover, these debtors cannot make good faith efforts to pay their loans as required by the third prong.

*Folsom),* 315 B.R. 161, 165 (Bankr. M.D.Fla.2004); *Johnson,* 299 B.R. at 681; *Hoskins v. Educ. Credit Mgmt. Corp. (In re Hoskins),* 292 B.R. 883, 887–88 (Bankr. C.D.Ill.2003); *Pace v. Educ. Credit Mgmt. Corp. (In re Pace),* 288 B.R. 788, 792 (Bankr.S.D.Ohio 2003); *Chime v. Suntech Student Loan (In re Chime),* 296 B.R. 439, 445 (Bankr.N.D.Ohio 2003); *Siegel v. U.S.A. Group Guarantee Servs. (In re Siegel),* 282 B.R. 629, 635 (Bankr.N.D.Ohio 2002). *See also Brosnan v. Am. Educ. Servs. (In re Brosnan),* 323 B.R. 533, 538 (Bankr.M.D.Fla.2005). Medical records which substantiate the debtor's testimony may be sufficient. *Id.; Matthews,* 324 B.R. at 323; *Johnson,* 299 B.R. at 681; *Hoskins,* 292 B.R. at 888. However, even if the debtor should succeed in having medical records admitted into evidence, some courts have ruled that such records do not establish whether the debtor's condition adversely impacts his future employment. *Burkhead v. United States (In re Burkhead),* 304 B.R. 560 (Bankr.D.Mass. 2004) (despite the debtor's 24–page summary of prior medical history to support her hardship claims, the court focused on the debtor's failure to present expert witness testimony about her long-term prognosis); *Ryan v. Dep't of Educ. (In re Ryan),* 310 B.R. 387, 389–390 (Bankr. S.D.Ill.2004) (finding that medical records acknowledging the debtor's various medical problems, but failing to note whether the problems prevented her from working, were insufficient). The general trend seems to be that the evidentiary burden of this second prong prevents *pro se* debtors from receiving the relief to which they may be entitled. In fact, one commentator has suggested that the discharge of student loans without expert testimony contravenes the Federal Rules of Evidence, as well as the seminal *Daubert* case and its progeny. Craig Peyton Gaumer, *Use Expert Witness Testimony in Student Loan Hardship Discharge Litigation,* 23–9 Am. Bankr.Inst. L.Rev. 8 (November 2004). *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The author further opines:

> ... based on applicable rules and case law, laypersons are simply not competent to provide guidance to the courts on whether a debtor's physical or mental problems are sufficiently dire, long-term circumstances to justify the entry of a hardship discharge of a student loan. Thus, parties litigating such matters in bankruptcy court should litigate medical hardship discharge cases by consulting appropriate experts, and being prepared to offer such testimony in court.

*Id.*

The Court realizes that many debtors suffer from financial hardship, and thus the dischargeability of student loans must be based on extreme or unique circumstances. Generally, those debtors who suffer from undue hardship are not in a position to obtain legal counsel, and thus have no choice but to proceed *pro se.* In addition, if debtors are even able to obtain medical treatment, they ordinarily do not have access to private health care. Therefore, it is challenging for debtors to enlist the help of medical professionals, particularly experts, in the prosecution of their case. It is naive to think that debtors can pay these professionals to come to court and testify on their behalf or that they will be able to subpoena such professionals. Moreover, it is difficult, if not impossible, for *pro se* debtors to overcome evidentiary challenges (such as objections to admissibility). The irony is that a debtor who is the most needy cannot afford a fresh start;

the evidentiary burden of the second prong denies *pro se* debtors much-deserved relief. A few courts have recognized the fundamental nature of this dilemma. In *Norasteh v. Boston Univ. (In re Norasteh)*, the court astutely observed:

> On the one hand, this debtor, like many, appeared pro se, and lacked the money to pay treating or expert medical professionals to come to court and testify on his behalf. *See Doherty v. United Student Aid Funds, Inc. (In re Doherty)*, 219 B.R. 665, 669 (Bankr.W.D.N.Y.1998). On the other hand, most judges are lay persons, and require some medical evidence to determine the nature, extent and likely duration of a disability.

311 B.R. 671, 679 (Bankr.S.D.N.Y.2004). Similarly, in *Doherty v. United Student Aid Funds (In re Doherty)*, the court acknowledged:

> [I]t is extraordinary for dischargeability litigation that hinges on a debtor's medical condition to actually hinge on medical testimony. This is because all dischargeability litigation involves real persons who are debtors under the Bankruptcy Code, and cannot afford to hire medical experts to testify to the effect of their disease on their disease on their earning capacity. When medical testimony is offered by the debtor it is to lay skepticism to rest, and in this writer's experience the medical condition of any debtor has never been the subject of dueling experts in § 523(a)(8) litigation.

219 B.R. 665, 669 (Bankr.W.D.N.Y.1998). Yet despite this awareness, courts often hold that the debtor has failed to sustain his burden of proof. *See Lowe*, 321 B.R. at 860 (holding "without any substantive evidence to corroborate the Debtor's testimony regarding her medical conditions, the Court must find that the Debtor has failed to sustain her burden under the second prong of the Brunner Test"); *Folsom*, 315 B.R. at 165 (holding that the debtor failed to satisfy the second prong where, "[o]ther than her testimony, [the debtor] presented no evidence that she actually suffers from a medical condition or that it will keep her from full-time employment for a significant portion of the repayment period"). *See also Cianciulli v. Student Loan Mktg. Ass'n (In re Cianciulli)*, 2005 Bankr.LEXIS 1129, *13–14 (Bankr.D. Or. June 7, 2005) (despite debtor's testimony regarding Crohn's Disease, ruling that "absent medical evidence that the condition is unremitting and likely to remain so, the Court cannot find that she will be permanently unable to work full-time"); *Burkhead*, 304 B.R. at 565–66 (noting that the debtor failed to call expert witnesses to testify about her long-term prognosis); *Hamilton v. HEMAR Inst. Corp. of Am. (In re Hamilton)*, 2003 Bankr.LEXIS 1257, *15–16 (Bankr.D.N.H. June 16, 2003) (finding that corroborating evidence was needed, despite debtor's testimony and three medical reports, to determine the nature of the medical condition, the long-term prognosis, and effect the condition may have on the debtor's employment opportunities).

In the absence of expert testimony, several courts have used judicial notice to engage in medical research to better critique and understand the debtor's medical representations as they relate to the second prong. *Pobiner*, 309 B.R. at 419–20 (taking judicial notice of the career prospects of persons suffering from Attention Deficit Hyperactivity Disorder as described in a National Institute of Mental Health publication); *Green v. Sallie Mae (In re Green)*, 238 B.R. 727, 735–36 (Bankr.S.D.Ohio 1999) (considering the debtor's employment history as well as taking judicial notice of the employment opportunities for persons suffering from bipolar disorder) (quoting *Doherty*, 219

B.R. at 670); *Doherty*, 219 B.R. at 670 (reviewing medical publications and treatises regarding bipolar disorder and taking judicial notice of the "most probable near-future" for a debtor who suffering from bipolar disorder). A few courts may look to other corroborating evidence such as public assistance. *Thomsen v. Dep't of Educ. (In re Thomsen)*, 234 B.R. 506, 513 (Bankr.D.Mont.1999) (noting that VA disability pension payments corroborate debtor's testimony); *Pena*, 155 F.3d at 1114 (noting that debtor's testimony corroborated by a disability award, continuing disability payments, and the letter the debtor of disability payments).

ECMC argues that the Debtor has not presented enough evidence regarding the diagnosis and prognosis of his medical conditions. The Debtor did respond to ECMC's request and filed his Answer to Interrogatories, as well as numerous documents regarding his medical conditions, employment history, and educational background. In fact, ECMC successfully objected to the admission of nearly all of the Debtor's documentation into evidence on the basis of hearsay and lack of foundation. Thus, ECMC used its legal advantage to prevent evidence from being considered. The Court finds that the Debtor used his best efforts to comply with discovery and submit corroborating evidence.

ECMC further argues that the Debtor failed to provide certified medical records, depositions, and/or expert testimony regarding his medical conditions and future earning potential. Claiming that nothing in the record supports that the Debtor is totally disabled and cannot work in the future, ECMC contends that the Debtor did not satisfy the second Brunner prong. ECMC relies on three cases to support its position. ECMC first cites to *Burton v. Pa. Higher Educ. Assistance Agency (In re Burton)*, where the debtor failed to provide corroborating medical evidence through expert testimony or depositions. 117 B.R. 167, 170–71 (Bankr.W.D.Pa.1990). The only evidence offered by the debtor was one letter which the court ruled was inadmissible hearsay. *Id.* at 170. This case is distinguishable from the instant case, as the Burton court applied a tripartite test. The Third Circuit did not adopt the Brunner test until 1996, six years later. Moreover, the debtor in *Burton* was represented by counsel who would have been aware of the need and method for properly introducing and authenticating evidence. The Debtor in the case at bar is proceeding *pro se* without knowledge as to the rules and admissibility of evidence. Moreover, the Debtor presented more than just one letter—in fact, numerous documents—to support his position. Although these documents were not admitted into evidence, the Debtor endeavored to provide corroborating evidence to support his testimony.

ECMC also cites to *Folsom v. United States Dep't of Educ. (In re Folsom)*, where the court held that the debtor must present corroborating evidence, although not necessarily expert testimony, to support his position beyond bare allegations. 315 B.R. 161, 165 (Bankr. M.D.Fla.2004). Once again, the debtor in *Folsom* was represented by counsel whereas the Debtor in the instant case is proceeding *pro se*. Moreover, that debtor presented no evidence that she actually suffered from various medical conditions or that those conditions would prevent her from full-time employment, while the Debtor here has attempted to submit numerous documents to the Court. In addition, the debtor in *Folsom* completed both a bachelor's and master's degree and did not seek employment the year before the trial. The Debtor in the case at bar has not received his degree and has continually tried to find employment through odd

jobs and labor pools. The third case ECMC relies upon is *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, contending that the Court cannot rely solely on the Debtor's testimony regarding his medical conditions; corroborating evidence, including expert testimony, must be provided. 267 F.3d 324 (3d Cir.2001). However, ECMC has misconstrued the Third Circuit's ruling. The appellate court stated that findings regarding the debtor's mental and physical conditions do *not* require expert testimony and could be made solely on the basis of the debtor's testimony:

> It was appropriate for the Bankruptcy Court, as the trier of fact, to assess [the debtor's] testimony and draw reasonable conclusions regarding her mental and emotional state. *E.g., In re Cline,* 248 B.R. 347, 350 (8th Cir. BAP 2000) (explaining that "there is no reason to view the trial court's findings [regarding the debtor's emotional state] as unreliable merely because no expert evidence was introduced").
>
> What is missing from the Bankruptcy Court's analysis, however, is any discussion of the nature of [debtor's] emotional and psychiatric problems, or how these problems prevent her from being gainfully employed. The Bankruptcy Court seems to have merely assumed that Brightful's emotional and psychiatric problems would automatically preclude her from holding full-time employment. . . .

*Brightful,* 267 F.3d at 330. Unlike in *Brightful,* in the instant case the Debtor has testified as to how his mental and physical conditions affect his ability to be employed.

Finally, ECMC argues that, according to *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch),* the Debtor must present corroborating medical evidence

other than unauthenticated letters. 409 F.3d 677, 681 (6th Cir.2005). The Sixth Circuit held that there was no expert testimony corroborating the debtor's claims and that the debtor's testimony was not sufficient. *Id.* However, the appellate court emphasized the lack of evidence put forth by the debtor to establish that her disabilities precluded her from obtaining and maintaining gainful employment. *Id.* at 681–82. In the instant case, the Debtor has testified that his physical and medical conditions prevent him from future employment. Moreover, the Debtor presented more than just his testimony. Furthermore, the debtor in *Tirch* was represented by counsel whereas the Debtor in the case at bar is proceeding *pro se* and cannot overcome the evidentiary obstacles. In addition, there are significant factual differences between the two cases, as the Debtor in *Tirch* received both a bachelor's and master's degree and stopped working before filing bankruptcy.

■ The Court rules that the cases relied upon by ECMC are not controlling, nor applicable, to the instant case. The Court also holds that the Debtor's testimony is credible and genuine. The Debtor explained how his emotional and physical problems adversely impacted his ability to work. The Debtor also articulated how these conditions would impair his full-time employment in the future. Moreover, the Debtor attempted to offer corroborating evidence in the form of letters from the V.A. and various healthcare providers. However, the Debtor, without any legal education, training, or assistance, was unable to challenge ECMC's objections. Nonetheless, the Debtor's testimony regarding his physical and emotional ailments was sufficient to show that these conditions have prevented him from being gainfully employed and will interfere with employment for a significant portion of the

repayment period. Accordingly, the Debtor has satisfied the second prong of the Brunner test. The Court carefully considered the debtor's testimony and determined that there is a basis for the conclusion that the debtor's medical condition constitutes the "additional circumstances" contemplated by the Brunner test.[13]

Under the third prong of the Brunner test, a debtor must show that he has made a good faith effort to repay student loans. *Cox,* 338 F.3d at 1241. The debtor must demonstrate that he is repaying the loan if he is in the position to do so. *Ulm,* 304 B.R. at 922. However, even if the debtor has not made payments, the Court must continue the good faith inquiry. *Polleys,* 356 F.3d at 1311 ("the failure to make a payment, standing alone, does not establish a lack of good faith"). "A finding of good faith ... turns on several considerations including the debtor's efforts to obtain employment, maximize his income, minimize his expenses, and participate in alternative repayment options." *Norasteh,* 311 B.R. at 676 (citing *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner),* 309 B.R. 405, 420–21 (Bankr.E.D.N.Y. 2004); *Pace v. Educ. Credit Mgmt. Corp. (In re Pace),* 288 B.R. 788, 793 (Bankr. S.D.Ohio 2003); *Chambers v. Nat'l Payment Ctr. (In re Chambers),* 239 B.R. 767, 770 (Bankr.N.D.Ohio 1999); *Douglass v. Great Lakes Higher Educ. Servicing Corp. (In re Douglass),* 237 B.R. 652, 657 (Bankr.N.D.Ohio 1999)). Moreover, the debtor bears the burden of proving that his failure to make payments results from factors "beyond his reasonable control." *Roberson,* 999 F.2d at 1136; *Brunner II,*

46 B.R. at 756. In the instant case, the Debtor has not repaid any of his student loans. The Debtor lives in abject poverty, and does not have the ability to make any student loan payments due to circumstances beyond his control. The Debtor has demonstrated that he suffers from various ailments including depression, anxiety, hypertension, and chronic back pain. These medical conditions prevent him from obtaining and maintaining employment. Moreover, the Debtor has endeavored to resolve his student loan obligations through inquiries with the United States Department of Education, the Georgia Student Finance Commission, the V.A., and his congressman, Senator Zell Miller. *See* Plaintiff's Exhibits 2A–2G.[14] The Court concludes that the Debtor has not been able to repay his student loans, and thus has satisfied the third prong of the Brunner test. Once again, this inquiry seems counterintuitive when applied to this case where the Debtor lives in abject poverty. As one court has noted, "[i]s being poor bad faith? Surely not. If [the debtor] does not have enough money to pay the student loan, [he] cannot be considered to be acting in bad faith if [he] does not pay that loan. This logical conclusion alone supports dischargeability." *Rutherford v. William D. Ford Direct Loan Program (In re Rutherford),* 317 B.R. 865, 880 (Bankr.N.D.Ala.2004).

## V. CONCLUSION

The Court previously found that the Debtor satisfied the Brunner factors, and has set forth its reasoning more fully in this opinion. The Court rules that except-

---

13. In future cases, the Court could conceivably retain its own expert pursuant to Rule 706(b) of the Federal Rules of Evidence and apportion the cost as appropriate between the parties. *See* Craig Peyton Gaumer, *Use Expert Witness Testimony in Student Loan Hardship Discharge Litigation,* 23–9 Am. Bankr. Inst. L.Rev. 8, 50 (November 2004).

14. There is a dearth of information as to whether the Debtor and ECMC explored alternative repayment options, deferment, or forbearance.

ing the Debtor's student loan debt from his discharge will impose an undue hardship on him. Accordingly,

**IT IS ORDERED** that the Debtor is granted an "undue hardship" discharge and the debts owed to ECMC are hereby dischargeable pursuant to section 523(a)(8) of the Bankruptcy Code.

**IT IS FURTHER ORDERED** that judgment be and is hereby entered in favor of the Debtor and against ECMC.

The Clerk's Office is directed to serve a copy of this Order upon the Debtor, Counsel for ECMC, the Defendants, and the Chapter 7 Trustee.